**BETHLEHEM STEEL CORPORATION, Plaintiff–Appellant,**

v.

**ERNST & WHINNEY, Defendant–Appellee.**

Supreme Court of Tennessee at Knoxville.

Dec. 30, 1991.

Michael E. Richardson, Ray L. Brock, Jr., Patrick, Beard & Richardson, P.C., Chattanooga, for plaintiff-appellant.

T. Maxfield Bahner, William H. Pickering, Chambliss, Bahner, Crutchfield, Gaston & Irvine, Chattanooga, for defendant-appellee.

REID, Chief Justice.

Permission to appeal was granted for the purpose of reviewing accountants' liability to non-clients for negligence in the preparation of inaccurate audit reports, an issue that has not been considered by this Court.

This case presents an appeal by Bethlehem Steel Corporation (Bethlehem) from the judgment of the Court of Appeals, which reversed a judgment notwithstand-

ing the verdict (JNOV) entered by the trial court in favor of Ernst & Whinney. Bethlehem, which is engaged in the business of manufacturing steel, sued Ernst & Whinney, a national accounting firm, for damages resulting from the negligent preparation of an unqualified audit report regarding W.L. Jackson Manufacturing Company, Inc. (Jackson), which, prior to its insolvency, was a customer of Bethlehem. Bethlehem alleged that it relied to its detriment on the audit report prepared by Ernst & Whinney in extending credit to Jackson.

A jury verdict awarding Bethlehem damages in the amount of $500,000 was set aside upon Ernst & Whinney's motion for JNOV, made pursuant to Rule 50.02, Tennessee Rules of Civil Procedure (T.R.Civ. P.), and the trial court conditionally granted Bethlehem a new trial pursuant to Rule 50.03, T.R.Civ.P., on the ground that the evidence preponderates against the verdict. The Court of Appeals, upon finding that the record contains material evidence supporting the jury verdict, reversed the judgment in favor of Ernst & Whinney and affirmed the trial court's grant of a new trial. The judgment of the Court of Appeals is affirmed.

The courts have adopted three general views of an accountant's liability to non-clients. The traditional view holds an accountant liable only to those with whom he is in privity or there is a relationship "so close as to approach that of privity." *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441, 446 (1931). Several jurisdictions still follow the privity or "near privity" rule. *See, e.g., Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155 (7th Cir. 1987) (applying Indiana law); *Stephens Industries, Inc. v. Haskins & Sells*, 438 F.2d 357 (10th Cir.1971) (applying Colorado law); *Robertson v. White*, 633 F.Supp. 954 (W.D.Ark.1986); *Colonial Bank v. Ridley & Schweigert*, 551 So.2d 390 (Ala.1989); *Idaho Bank & Trust Co. v. First Bancorp*, 115 Idaho 1082, 772 P.2d 720 (1989); *Thayer v. Hicks*, 243 Mont. 138, 793 P.2d 784 (1990), *Citizens Nat. Bank v. Kennedy & Coe*, 232 Neb. 477, 441 N.W.2d 180 (1989). However, most jurisdictions have abandoned this restrictive standard because it

does not impose upon accountants a duty commensurate with the significance of their role in current business and financial affairs. As stated by the Iowa Supreme Court in *Ryan v. Kanne*, 170 N.W.2d 395 (Iowa 1969):

When the accountant is aware that the balance sheet to be prepared is to be used by a certain party or parties who will rely thereon in extending credit or in assuming liability for obligations of the party audited, the lack of privity should be no valid defense to a claim for damages due to the accountant's negligence. We know of no good reason why accountants should not accept the legal responsibility to known third parties who reasonably rely upon financial statements prepared and submitted by them.

170 N.W.2d at 401. *See* Note, *Raritan River Steel Co. v. Cherry, Bekaert & Holland: Accountants' Liability to Third Parties for Negligent Misrepresentation*, 67 N.C.L.Rev. 1459, 1467–68 (1989).

The classes of non-clients who might rely on information provided by an accountant include creditors, investors, shareholders, management, directors, and regulatory agencies. The varying relationships are on a single continuum, and the slices of the continuum encompassing liability may vary in thickness depending upon the factual situation. *See* Fiflis, *Current Problems of Accountants' Responsibilities to Third Parties*, 28 Vand.L.Rev. 31, 108 n. 286 (1975). Public policy considerations determine the extent along the continuum to which accountants will be held liable for inaccurate audits. Some states hold accountants liable to the extent that loss incurred was "reasonably foreseeable."

This expansive view holds the accountant liable to all persons who might reasonably be foreseen as relying upon his work product. *See Int'l Mortgage Co. v. John P. Butler Accountancy Corp.*, 177 Cal. App.3d 806, 223 Cal.Rptr. 218 (1986); *Touche Ross & Co. v. Commercial Union Ins. Co.*, 514 So.2d 315 (Miss.1987); *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983); *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis.2d 376, 335

N.W.2d 361 (1983). *See also Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (1958) (balancing test approximating "reasonably foreseeable" standard).

The trial court in this case applied the reasonably foreseeable standard and charged the jury as follows:

Now, ladies and gentlemen, an independent auditor who negligently performs an audit may be liable to reasonably foreseeable users of that audit who request and receive the financial statement from the audited entry for a proper business purpose, and who then reasonably rely on the financial statement, suffering a loss proximately caused by the auditor's negligence.

This reasonably foreseeable standard has been criticized as extending liability too far. As stated by the North Carolina Supreme Court in *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 367 S.E.2d 609 (1988),

[I]n fairness accountants should not be liable in circumstances where they are unaware of the use to which their opinions will be put. Instead, their liability should be commensurate with those persons or classes of persons whom they know will rely on their work. With such knowledge the auditor can, through purchase of liability insurance, setting fees, and adopting other protective measures appropriate to the risk, prepare accordingly.

367 S.E.2d at 616. *See* Note, *H. Rosenblum, Inc. v. Adler: A Foreseeably Unreasonable Extension of an Auditor's Legal Duty,* 48 Alb.L.Rev. 876, 894–920 (1984).

A majority of jurisdictions have adopted the rule set forth in § 552 of the *Restatement (Second) of Torts* (1977), which provides, in part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the infor-

mation, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

The three general standards adopted in the various jurisdictions for holding accountants liable for their defective work product were compared by the Fifth Circuit Court of Appeals in *First Nat'l Bank of Commerce v. Monco Agency, Inc.,* 911 F.2d 1053 (5th Cir.1990), as follows:

The Restatement represents the moderate view, allowing only a restricted group of third parties to recover for pecuniary losses attributable to inaccurate financial statements. Significantly, the accountants retain control over their liability exposure. The restricted group includes third parties whom the accountants intend to influence and those whom the accountants know their clients intend to influence. Accordingly, liability is fixed by the accountants' particular knowledge at the moment the audit is published, not by the foreseeable path of harm envisioned by jurists years following an unfortunate business decision.

However, the Restatement is more generous than New York's "near privity" rule, since section 552 does not require that the accountants manifest *conduct* underscoring their understanding of a particular non-client's reliance upon the work product. The near-privity rule, in other words, requires that the precise identity of the informational consumer be foreseen by the auditor; however, the Restatement contemplates identification

of a narrow group, not necessarily the specific membership within that group.

\* \* \* \* \* \*

Accordingly, the Restatement adopts the cautious position that an accountant may be liable to a third party with whom the accountant is not in privity, but not every reasonably foreseeable consumer of financial information may recover. The Restatement's approach currently constitutes the majority position, with approximately nineteen jurisdictions aligned with section 552 for the negligent misrepresentation of commercial information.

911 F.2d at 1059–60 (emphasis in original) (footnote omitted).

Tennessee has adopted the *Restatement (Second) of Torts* § 552 as the guiding principle in negligent misrepresentation actions against other professionals and business persons. Recently, in *John Martin Co., Inc. v. Morse/Diesel, Inc.,* 819 S.W.2d 428 (Tenn.1991), the Court held that a subcontractor, despite lack of privity, may pursue an action against a construction manager based on negligent misrepresentation. In that case, the Court cited prior Tennessee cases adopting the *Restatement* standard. One such case was *Stinson v. Brand,* 738 S.W.2d 186 (Tenn.1987), which found that an attorney may be liable to a third party for negligence even if no attorney-client relationship was intended. The *Stinson* Court recognized, as follows, that the *Restatement* principles could extend to all professions:

> [I]n the case of *Tartera v. Palumbo,* 224 Tenn. 262, 453 S.W.2d 780 (1970), this Court adopted the principles later approved by the American Law Institute in *Restatement (Second) of Torts 2d,* § 552 (1977) in connection with the liability of business or professional persons who negligently supply false information for the guidance of others in their business transactions. These principles, of course, could apply to attorneys as well as to land surveyors, accountants, or title companies.

738 S.W.2d at 190.

The conclusion is that Section 552 of the *Restatement* is the appropriate standard for actions by third parties against accountants based on negligent misrepresentation in this state.

This conclusion, however, leaves a subsidiary issue to be discussed because application of the *Restatement* rule has not been uniform. *See Raritan River Steel,* 367 S.E.2d at 617. A restrictive interpretation of § 552 would limit the class of third parties who may recover to those *actually* and *specifically* known by the accountant. *See, e.g., First National Bank of Commerce,* 911 F.2d at 1061–63.

Comment (h), in the paragraph discussing subsection (2) of § 552, provides some direction in delineating the limits of liability under the *Restatement* view:

> Under this Section, as in the case of the fraudulent misrepresentation (see § 531), it is not necessary that the maker should have any particular person in mind as the intended, or even the probable, recipient of the information. In other words, it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. *It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group.* It is sufficient, in other words insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given. It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility

of action in reliance upon it, on the part of anyone to whom it may be repeated. (Emphasis added.)

This comment emphasizes that the word "knows" in subsection (2) of the *Restatement* should not be construed to require that the accountant know by *name* the specific person or group of persons who will rely on his work. As a court of appeals in Texas stated,

> To allow liability to turn on the fortuitous occurrence that the accountant's client specifically mentions a person or class of persons who are to receive the reports, when the accountant may have that same knowledge as a matter of business practice, is too tenuous a distinction for us to adopt as a rule of law.

*Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 412 (Tex.Ct.App.—Dallas 1986, writ ref'd n.r.e.).

Even though specific knowledge is not required in order to hold an accountant liable, liability is limited to those persons or class of persons, as determined by current business practices and the particular factual situation, whom the accountant at the time the report is published should reasonably expect to receive and rely on the information. *See Shatterproof Glass Corp. v. James*, 466 S.W.2d 873, 879 (Tex.Ct.App.—Fort Worth 1971, writ ref'd n.r.e.). *See also* Note, *Accountants' Liability for Compilation and Review Engagements*, 60 Tex.L.Rev. 759, 776 n. 90 (1982).

With regard to other issues raised in the Court of Appeals and in this Court, the Court affirms the following actions of the Court of Appeals for the reasons stated in its opinion:

(1) In reversing the trial court's judgment for Ernst & Whinney;

(2) In granting Bethlehem a new trial; and

(3) In holding that the applicable limitation of action is three years.

The judgment of the Court of Appeals is affirmed, and the case is remanded for a new trial consistent with this opinion.

Costs are adjudged one-half to the appellant and one-half to the appellee.

DROWOTA, O'BRIEN, DAUGHTREY, and ANDERSON, JJ., concur.