9 F.3d 108
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MINERAL INVESTORS, LTD., Gordian Investors, Inc., Gordian
Securities, Inc., James F. Beck, James A. Delay,
Plaintiffs-Appellants,
v.
R.C. LAMB, Individually and d/b/a Lamb Appraisal Company,
Corrine Lane, Defendants-Appellees.
 No. 92-5765.
 United States Court of Appeals, Sixth Circuit.
 Oct. 19, 1993.
 
 Before: MERRITT, Chief Judge; GUY and BATCHELDER, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Plaintiffs, a group of Florida investors, appeal a jury verdict against them in this diversity action for professional malpractice under theories of negligent misrepresentation and negligence resulting from the Tennessee defendants' negligent real estate appraisal. Plaintiffs claim that the district court erred by instructing the jury on contributory negligence after ruling prior to the trial that the defense of contributory negligence did not apply to the case. Plaintiffs also claim that the district court erroneously qualified Bertram Lyles, a Tennessee real estate investment professional, as an expert and allowed him to state inadmissible legal conclusions and to testify in a way that could not assist the jury. We find that the jury was not misled by the jury instructions and that the trial court's treatment of Lyles was proper. We thus affirm the jury verdict.
 
 
 2
 * Plaintiff James DeLay was a broker and the president of Gordian Securities, a Florida securities dealer. Businessman Robert Erwin approached plaintiff DeLay seeking financing so his corporation, Erwin Minerals Corporation, could purchase a limestone quarry near Savannah, Tennessee. Erwin had previously sought financing from other sources. In that connection, he had obtained an appraisal of the property from the defendants Lane and Lamb, who are Nashville real estate appraisers. The appraisal valued the land at the 114-acre site at $1,504,800, or $13,200 per acre. This evaluation was many times higher than the value of ordinary farm land in this rural area of Tennessee.
 
 
 3
 Erwin also provided plaintiff Delay with other investigative materials in connection with the property, including rock samples and his own research on the viability of a quarry on the proposed site. Delay toured the quarry site with Erwin, and in August, 1987, plaintiffs and their securities lawyer conducted an investigation of the property, and called defendant Lamb to confirm the values in the appraisal. Plaintiffs contend that during that conversation Lamb told them that the figures for the land were accurate and that "if liquidation became necessary, he would personally buy the land" for $1.5 million. Defendant Lamb contends that the plaintiffs' lawyer never asked him about the land's value in the event it could not be used as a rock quarry but instead had to be sold as farm land, and denied that he offered to buy the land himself. Farm land in that section of Tennessee was selling for considerably less than $1000 per acre.
 
 
 4
 Plaintiffs admitted at trial that they possessed a copy of the Hardin County tax assessor's appraisal of the property which valued the entire 114 acres at $18,200. Plaintiff Delay stated that the tax appraisal did not shake his confidence in defendants' $13,200 per acre appraisal because of his experience that "it's not unusual to have tax appraisers tax appraise at very low values."
 
 
 5
 Plaintiff Delay and others at Gordian Securities decided to form a limited partnership, Mineral Investors, Ltd., as a vehicle for loaning Erwin the money to purchase and operate the quarry. They formed Mineral Investors in September, 1987, and loaned Erwin $750,000. Mineral Investors was to get 10% interest on the loan in addition to royalties on the mined limestone.
 
 
 6
 On January 31, 1988, Erwin defaulted on the loan and plaintiffs foreclosed on the property. During efforts to sell the property, an appraisal performed on behalf of a prospective buyer valued the land at $63,000. Plaintiffs received an offer of $100,000, but never got another offer for the land. Plaintiffs sued defendants for their losses, claiming they relied on the negligent appraisal. In pretrial motions arguments, plaintiffs' attorney stated that plaintiffs were seeking approximately $1.2 million in damages. Plaintiffs arrived at that figure by adding the $750,000 principal and some $556,000 in interest they claimed had accrued, and by subtracting the value of the property, which they placed at $100,000 because that was the offer they received.
 
 
 7
 The parties agreed to a bifurcated trial, with the jury deciding the question of liability only and the district judge deciding damages should the jury find the defendants liable. Prior to the trial, plaintiffs moved in limine for a ruling that contributory negligence should not apply to the case because of their fear that defendants' expert would testify that they were negligent in relying on the appraisal. Plaintiffs' counsel argued that the sole issue on the negligence claim would be causation; whether the negligently prepared appraisal caused plaintiffs' losses, or whether plaintiffs' own conduct caused its losses. The district court ruled:
 
 
 8
 It seems to me that contributory negligence is not the right word to use for this anyway. What we're talking about here is proximate causation issues. And we're talking about, perhaps, negligent reliance upon the appraisal. And I'm certainly not going to cut you off on anything to do with negligent reliance upon the appraisal, but these other things that occurred after the appraisal was done or after the deal--in the making of the deal or after the deal was made are not relevant on the issue of damages in this case. So I'm going to rule at this point that it's not a contributory negligence case.
 
 
 9
 It is negligence if you can show that the plaintiffs were negligent in relying upon it, but it's my ruling that bad business decisions in entering the deal are not the proximate cause of the damage in this case because if the plaintiffs' allegations are true, that if the appraisal had been correct there would have been no damage, the plaintiffs would have sustained no damage even if they had done everything poorly.
 
 
 10
 At the trial, defendants presented Bertram Lyles as an expert witness, and over plaintiffs' objection, the district court qualified him. Lyles has an M.B.A. and is an officer with Jacques-Miller, Inc., a Nashville real estate investment firm. He had structured numerous real estate offerings, and testified that he spent a large part of his professional time reviewing and evaluating potential real estate investment opportunities. The court ruled that Lyles could testify as an expert, but stated that his testimony should be limited to "things that have to do with reliance on the appraisal."
 
 
 11
 Lyles testified that in his opinion plaintiffs' reliance on the appraisal was "not close to being justifiable." He stated that the appraisal valued the property as a going business, and plaintiffs should have known that if the quarry failed, the land would not have been worth what the appraisal said. Lyles also stated that there were numerous "red flags" in the appraisal, among which were the fact that the appraisal purported to take a "market approach," but mentioned no comparable quarry sales, and the fact that the appraisal did not apply the standard cost approach, which analyzes the value of a property by comparing it to what a similar property would cost.
 
 
 12
 At the end of the trial, the court charged the jury on theories of negligence and negligent misrepresentation. Despite its earlier ruling that contributory negligence would not apply in the case, in the negligence instruction, the court stated:
 
 
 13
 Plaintiffs' first theory of recovery is negligence; that is, that defendants Lamb and Lane were negligent in the manner in which they performed the appraisal. A plaintiff who was injured as a proximate result of some negligent conduct on the part of a defendant is entitled to recover compensation for such injury from that defendant. Thus, for the plaintiffs to be entitled to a verdict on the theory of negligence in this case, it must appear from the evidence, number one, that a defendant was negligent; and, number two, that such negligence was a proximate cause of injury to the plaintiff; and, number three, that the plaintiffs were not negligent or, if they were negligent, that the negligence did not contribute as a proximate cause of the injury.
 
 
 14
 Plaintiffs objected to the charge, but the district court refused a curative instruction. The jury deliberated for only one hour and came back with a verdict in favor of defendants. Plaintiffs moved for a new trial, claiming error with respect to the qualification and testimony of Lyles and because of what they claimed was a contributory negligence instruction. At the very least, plaintiffs claimed, the court should have instructed the jury on remote contributory negligence. The district court denied the plaintiffs' motion.
 
 II
 
 15
 Although the district court erred by first deciding in limine that contributory negligence did not apply and then by giving a contributory negligence instruction, we consider this error harmless and sustain the jury verdict.
 
 
 16
 The plaintiffs tried to establish liability on two theories, negligent misrepresentation and professional negligence or straight negligence. No matter how the parties phrase it or what legal theory they claim the case falls under, the fundamental question in the case was whether plaintiffs' reliance on defendants' negligent real estate appraisal was reasonable. Plaintiffs, under a negligent misrepresentation theory, were required to show that their "justifiable reliance" on the appraisal caused their loss. Restatement (Second) of Torts Sec. 552; see also Bethlehem Steel Corp. v. Ernst & Whinney, 822 S.W.2d 592, 595 (Tenn.1991) (noting that Tennessee has adopted Sec. 552 as the guiding principle in negligent misrepresentation actions against professionals). The plaintiffs thus necessarily presented the jury with the question of what caused their losses. Under a negligence theory, on the other hand, the plaintiffs had to show that the negligent appraisal was a "legal" or "proximate" cause of their losses. Restatement (Second) of Torts Sec. 281 & 430; c.f. Delmar Vineyard, 486 S.W.2d at 921 (stating that in accounting malpractice cases a plaintiff can recover under a negligence theory "for the damages that are shown to proximately or naturally result" from the negligence).
 
 
 17
 Although there are several ways to describe the tort plaintiffs believe defendants committed, there is only one overriding issue in this case: whether the plaintiffs' reliance on the negligent appraisal was reasonable. An accurate instruction in the case on this issue could have been short and simple: "If you determine that plaintiffs' losses were caused by reasonable reliance on the appraisal, find for plaintiffs. If you determine that plaintiffs' losses were caused by unreasonable reliance on the appraisal, find for defendants." The district court's instructions to the jury on plaintiffs' negligence theory explained the key issue in the case sufficiently. After careful study of the case, we do not believe that the jury was misled by the error of the district court in its handling of contributory negligence. We regard as overwhelming the evidence of plaintiffs' unreasonable reliance on the $13,000 per acre appraisal of the land in question. The district court's error was harmless.
 
 III
 
 18
 Plaintiffs' second claim is that the district court erred in qualifying Bertram Lyles as an expert witness and in allowing him to testify as to matters that could not assist the jury or that amounted to legal conclusions. This claim is without merit.
 
 
 19
 Federal Rule of Evidence 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702 (emphasis added). District courts retain wide discretion over whom they may qualify as experts, and their determinations on the admission or exclusion of expert evidence are to be sustained unless "manifestly erroneous." K.M.C. Co., Inc. v. Irving Trust Co., 757 F.2d 752, 764 (6th Cir.1985) (quoting Salem v. United States Lines Co., 370 U.S. 31, 35 (1962)). We have held that "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." Davis v. Combustion Engineering, Inc., 742 F.2d 916, 919 (6th Cir.1984).
 
 
 20
 The district court's qualification of Lyles as an expert was certainly not "manifestly erroneous." Lyles is a well-educated, experienced real estate deal-maker who analyzes real estate appraisals frequently in making investment decisions similar to the one plaintiffs faced. His testimony, as the district court correctly stated, assisted the jury on the question of the reasonableness of plaintiffs' reliance on the appraisal.
 
 
 21
 Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704. "Rule 704 abolishes a long recognized 'ultimate issue' objection to opinion testimony and shifts the focus of the inquiry to 'whether the testimony is' otherwise admissible." Heflin v. Stewart County, Tennessee, 958 F.2d 709, 715 (6th Cir.1992) (citing Torres v. County of Oakland, 758 F.2d 147, 150 (6th Cir.1985)). Lyles' testimony was that the plaintiffs' reliance on the appraisal was not justified and that there were a number of "red flags" that should have prevented the plaintiffs from entering the venture. Given the fact that Lyles' testimony could assist the jury on the question of what was reasonable for plaintiffs to do with the information they had, the testimony was properly admitted.
 
 IV
 
 22
 We find no merit to either of plaintiffs' claims. For the foregoing reasons, the judgment of the district court is AFFIRMED.