IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

**FOR PUBLICATION**

| | |
|---|---|
| WILLIAM ROBINSON, a/k/a BILLY C. ROBINSON, | ) ) ) **Filed: September 15, 1997** |
| Plaintiff/Appellee, | ) ) DAVIDSON CIRCUIT |
| Vs. | ) ) Hon. Barbara N. Haynes ) Judge |
| JAMES R. OMER, SR., | ) ) |
| Defendant/Appellant. | ) No. 01S01-9611-CV-00228 |

**FILED**

September 15, 1997

**Cecil W. Crowson
Appellate Court Clerk**

FOR PLAINTIFF/APPELLEE:

Robert L. Callis
Callis & Hershey
Mt. Juliet, Tennessee

FOR DEFENDANT/APPELLANT:

Winston S. Evans
Evans, Jones, & Reynolds
Nashville, Tennessee

# O P I N I O N

COURT OF APPEALS REVERSED IN PART
JUDGMENT OF TRIAL COURT REINSTATED.

DROWOTA, J.

The plaintiff, William Robinson, brought this action against the defendant, attorney James R. Omer, Sr., alleging negligent misrepresentation.[1]  Robinson asserts that he agreed to secretly videotape the sexual encounters of his friend, and Omer's client, Dewey Lineberry, in reliance upon Omer's erroneous advice that the videotaping was legally permissible.   Robinson initiated this action seeking to recover compensatory and punitive damages after he settled the civil lawsuits which were filed against him by some of the women who were secretly taped.

The trial court granted Omer's motion for summary judgment, but the Court of Appeals reversed, finding disputed issues of material fact.  Thereafter, we granted Omer's application for permission to appeal.  We emphasize that Omer denies giving such advice to Lineberry.   However, taking the allegations as true and viewing the evidence in the light most favorable to Robinson, the nonmoving party, as we must for purposes of summary judgment, we conclude that the allegedly negligent and false legal advice was supplied for the guidance of others in personal matters rather than business transactions. Therefore, the defendant met his burden of negating an essential element of the plaintiff's claim for negligent misrepresentation by establishing that the alleged false information was not supplied for the guidance of others in their *business transactions.* Restatement (Second) of Torts, Section 552 (1977).  The burden then shifted to the plaintiff, the non-moving party, to show that the information was supplied for a business purpose.  The plaintiff failed to meet that burden. Accordingly, the trial court properly granted summary judgment.  The  judgment of the Court of Appeals with respect to the claim of negligent misrepresentation is reversed, and the trial court's grant of summary judgment to the defendant is reinstated.

---

[1]Robinson also alleged, in this action, outrageous conduct and invasion of privacy. The trial court granted Omer's motion for summary judgment on these claims and the Court of Appeals affirmed.  Robinson did not seek to appeal from the Court of Appeals' judgment as to those claims.

## BACKGROUND

Because summary judgment was awarded to the defendant, the following statement of facts is based upon the most favorable view of the record towards the plaintiff, the nonmoving party.[2]

William Robinson, the plaintiff, and Dewey Lineberry, have been friends and business associates for many years. In 1986, Robinson, a contractor by trade, agreed to construct a three story office building for Lineberry, a local businessman, in Mt. Juliet, Tennessee. On the third floor of the building Robinson constructed, at Lineberry's direction, a "camera room" equipped with two way mirrors through which a person could look into a weight room and bathroom located next to Lineberry's office. Lineberry told Robinson that he intended to use the camera room to secretly videotape his sexual encounters because he was concerned that he might be falsely accused of rape in the future. Lineberry believed that having videotapes of his sexual encounters would protect him from such allegations. Robinson was aware of Lineberry's concern and actively participated in the construction of the camera room.

The defendant, James R. Omer, Sr., is a licensed Tennessee attorney who represented Lineberry in a variety of personal and business matters between the mid-1970's and 1990. According to Robinson's amended complaint, Omer advised Lineberry, prior to the construction of the office building, that building a camera room and secretly videotaping sexual encounters without the consent of the women involved was completely legal and comparable to keeping a diary. According to the allegations, Omer suggested that Lineberry persuade his good friend Robinson to act as cameraman. When Lineberry relayed Omer's suggestion, Robinson was reluctant to

---

[2]Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993).

-3-

assume the role of cameraman. However, Lineberry called Omer from his office for the purpose of assuring Robinson of the legality of the secret taping. According to the allegations of record, Omer, who had been told Robinson was present, assured Lineberry that the activity was legally permissible, and again compared it to keeping a diary.

Robinson did not have an attorney-client relationship with Omer, and he never personally received legal advice from Omer about the legality of the secret videotaping. However, Robinson, from the concealed camera room, secretly videotaped numerous instances of Lineberry having sexual intercourse with women in the weight room and bathroom which were located on the third floor of the office building. Robinson videotaped Lineberry's sexual encounters from 1986 to 1993.

The videotaping remained secret until Omer informed District Attorney General, Tom P. Thompson, Jr., on January 6, 1994, that Lineberry had a secret camera room in his office which he had used to film a lingerie party. Even though he had known about the camera room, by his own admission, for about one year, Omer provided the district attorney with this information only after receiving a complaint which Lineberry had filed against him with the Board of Professional Responsibility.[3]

Based upon the information provided by Omer, Wilson County law enforcement officers obtained a warrant to search Lineberry's office. The search uncovered videotapes of Lineberry having sex with various women. Robinson admitted to police

---

[3]According to the allegations, sometime prior to 1992, Omer promised Lineberry a fee in exchange for personal injury referrals. Lineberry made such a referral that resulted in a substantial settlement, but Omer refused to pay the promised fee. Lineberry apparently felt mistreated and filed a complaint against Omer with the Board of Professional Responsibility. Omer received the complaint on December 20, 1993 and called the district attorney general on January 6, 1994.

-4-

that he had operated the video camera. Although no criminal charges were filed against Lineberry or Robinson, law enforcement officials contacted several of the women who were taped, and four of them filed civil lawsuits against both Lineberry and Robinson, alleging, among other things, invasion of privacy and outrageous conduct.

Robinson settled the claims filed against him and then instituted this lawsuit against Omer asserting negligent misrepresentation. Robinson alleged that he relied upon Omer's advice, given to Lineberry that, secretly videotaping Lineberry's sexual encounters, without the consent of the women involved, was legally permissible. Robinson claimed that Omer knew or should have known that he would rely upon that advice. Robinson also asserted claims of outrageous conduct and invasion of privacy.

Omer moved to dismiss the action, and the trial judge held a hearing on the motion. Because matters outside the pleadings were presented and considered, the trial judge treated it as a motion for summary judgment which she granted, in favor of Omer, on all three claims. Robinson appealed, and the Court of Appeals affirmed the trial court's decision with respect to the claims of invasion of privacy and outrageous conduct, but reversed the grant of summary judgment on the negligent misrepresentation claim. Thereafter, we granted Omer permission to appeal and now reverse the judgment of the Court of Appeals with respect to the claim of negligent misrepresentation, and reinstate the judgment of the trial court.

## SUMMARY JUDGMENT

The standards governing an appellate court's review of a summary judgment motion are well settled. Our inquiry involves purely a question of law; therefore, we review the record without a presumption of correctness to determine whether the

absence of genuine issues of material facts entitle the defendant to judgment as a matter of law. <u>McCarley v. West Quality Food Service</u>, ___ S.W.2d ___ (Tenn. 1997); <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997); <u>McClung v. Delta Square Ltd. Partnership</u>, 937 S.W.2d 891, 894 (Tenn. 1996); <u>Byrd v. Hall</u>, 847 S.W.2d 208, 210 (Tenn. 1993); Tenn. R. Civ. P. 56.03.

Likewise, the standards governing the assessment of evidence in the summary judgment context are also well established. Mere conclusory assertions that the non-moving party has no evidence are clearly insufficient. <u>Byrd</u>, 847 S.W.2d at 215. The movant must either affirmatively negate an essential element of the non-movant's claim or conclusively establish an affirmative defense. <u>McCarley</u>, ___S.W.2d at ___; <u>Byrd</u>, 847 S.W.2d at 215, n. 5. If the movant fails to negate a claimed basis for the suit, the non-movant's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. <u>Id</u>. If the movant successfully negates a claimed basis for the action, the non-movant may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.[4] <u>Id</u>. Courts must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. <u>Bain</u>, 936 S.W.2d at 622; <u>Byrd</u>, 847 S.W.2d at 210-11. If both the facts and conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion, summary judgment should be granted. <u>McClung</u>, 937 S.W.2d at 894; <u>Carvell v. Bottoms</u>, 900 S.W.2d 23, 26 (Tenn. 1995).

---

[4]As we pointed out in <u>Byrd</u>, and reaffirmed in <u>McCarley</u>, a nonmoving party may satisfy his or her burden by (1) pointing to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (2) by rehabilitating the evidence attacked in the moving party's papers, (3) by producing additional evidence showing the existence of a genuine issue for trial, or (4) submitting an affidavit explaining why further discovery is necessary as provided for in Tenn. R.Civ. P. 56.06. <u>McCarley</u>, ___ S.W.2d at ___; <u>Byrd</u>, 847 S.W.2d at 215, n. 6.

Although the standards are strict, in this case summary judgment is appropriate. Omer met his burden of negating an essential element of the claim of negligent misrepresentation. The burden then shifted to Robinson to show that the information was supplied for guidance in business transactions. Robinson failed to satisfy that burden. The evidence in this record, viewed in the light most favorable to Robinson, the nonmoving party, fails to establish the existence of an essential element of the claim -- information supplied for the guidance of others in their *business transactions.*

## NEGLIGENT MISREPRESENTATION

This Court has recognized three distinct actions in tort based upon misrepresentation: fraud or deceit; strict liability under Section 402B of the <u>Restatement (Second) of Torts</u> (1965); and negligent misrepresentation under Section 552 of the <u>Restatement (Second) of Torts</u> (1977). <u>Ritter v. Custom Chemicides, Inc.</u>, 912 S.W.2d 128, 130 (Tenn. 1995); <u>see</u> <u>also</u> <u>John Martin Co. v. Morse/Diesel, Inc.</u>, 819 S.W.2d 428 (Tenn. 1991); <u>Jasper Aviation, Inc. v. McCollum Aviation, Inc.</u>, 497 S.W.2d 240, 242-43 (Tenn. 1972).

This case concerns the third cause of action, negligent misrepresentation. Tennessee has adopted Section 552 of the <u>Restatement (Second) of Torts</u> "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." <u>Bethlehem Steel Corp. v. Ernst & Whinney</u>, 822 S.W.2d 592, 595 (Tenn. 1991). Section 552 provides, in pertinent part, as follows:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, <u>supplies false information for the guidance of others in their business transactions</u>, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to

exercise reasonable care or competence in obtaining or communicating the information.

(2)     Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a)   by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b)  through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts, §552 (1977) (emphasis added).

In discussing the requirements for recovery under Section 552, this Court has stated that liability in tort will result, despite the lack of contractual privity between the plaintiff and defendant, when,

(1)  the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

(2)   the defendant supplies faulty information meant to guide others in their business transactions; and

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relies upon the information.

John Martin Co., 819 S.W.2d at 431 (emphasis added); accord Ritter, 912 S.W.2d at 130.

Applying this formulation of the rule, this Court has allowed non-clients to recover from attorneys under Section 552. See e.g. Collins v. Binkley, 750 S.W.2d 737 (Tenn. 1988); Stinson v. Brand, 738 S.W.2d 186 (Tenn. 1987). In these cases, the lawyers had negligently provided erroneous information in the course of real estate transactions

-8-

which was relied upon by nonclient participants to the transactions. This Court held recovery was appropriate, even though the plaintiffs were not clients, because the advice was given for the guidance of the plaintiffs in the course of the real estate transaction and reliance upon that advice was justifiable and foreseeable.

Likewise, in the non-lawyer cases involving application of Section 552, recovery has been allowed only when the advice or information negligently supplied was given in the course of a commercial or business transaction for guidance of others in their business transactions. See e.g. Bethlehem Steel Corp., 822 S.W.2d at 592 (national accounting firm which negligently prepared an audit report regarding customer of manufacturer held liable to manufacturer which relied upon the audit report to its detriment in extending credit to customer); John Martin Co., 819 S.W.2d at 429 (construction manager who negligently supplied information regarding the construction project held liable to subcontractor who relied upon the information in performing work at the site); Tartera v. Palumbo, 453 S.W.2d 780 (Tenn. 1970) (land surveyor who negligently prepared a plat for the purchaser of property held liable to sellers because he had full knowledge that the survey was to be used for describing the property in the warranty deed upon which both the sellers and buyers would rely); Shelby v. Delta Air Lines, Inc., 842 F.Supp. 999, 1015 (M.D. Tenn. 1993)("The Tennessee cases involving negligent misrepresentation all involve commercial transactions.").

In contrast, the advice allegedly given by Omer, upon which Robinson claims to have relied, was not provided for the guidance of Lineberry and Robinson in a business transaction. Indeed, the conduct of Lineberry and Robinson, in no way, was related to a commercial or business transaction. Robinson videotaped Lineberry's sexual encounters as a favor and accommodation to Lineberry, as is evident from Robinson's

deposition testimony. Robinson agreed that he considered Lineberry to be "a really good friend," and said that he received no payment for operating the video camera for Lineberry. When asked whether his "willingness to videotape" was attributable to a desire to protect a financial interest he had with Lineberry due to their business relationship, Robinson responded as follows:

A.    I don't think so. . . .

Q.    I'm just asking your motivation. I mean, you've told us that you did it because [Lineberry] asked you to, and because he wanted to be protected from a false claim of rape. And all I'm trying to follow up on is whether or not part of your motivation was that, in light of your business relationship with him, you felt a financial necessity to protect yourself and him?

A.    I don't think that would have been a primary concern of mine, no sir.

Q.    Would it have been any concern of yours?

A.    I can't say as it crossed my mind, no, sir.

Therefore, even assuming, as we must, that defendant Omer advised Lineberry that secretly videotaping his sexual encounters, without the consent of the women involved, was legally permissible, Robinson's negligent misrepresentation claim must fail because that advice was not given for the guidance of Lineberry or Robinson in their business transactions. See Shelby, 842 F.Supp. at 1015 ("[T]he language of Section 552 expressly refers to the negligent supplying of false information 'for the guidance of others in their business transactions.'") (emphasis in original) (applying Tennessee law); see also Pickering v. Pickering, 434 N.W.2d 758, 762 (S.D. 1989) (husband's claim of negligent misrepresentation against wife for misleading him about the paternity of a child born during their marriage failed because it did not arise from a commercial or business transaction).

-10-

Robinson videotaped Lineberry's sexual activities solely as a favor to his good friend. Lineberry never paid Robinson for his efforts, and Robinson testified that when he decided to act as cameraman, business interests did not "cross[] his mind." Therefore, the evidence in this record, viewed in the light most favorable to Robinson, fails to establish an essential element of the claim for negligent misrepresentation -- that the allegedly negligent advice given by Omer was meant to guide others in their business transactions.

## CONCLUSION

Because we conclude that the allegedly negligent legal advice supplied by Omer was for the guidance of others in personal matters rather than business transactions, the defendant met his burden of negating an essential element of the plaintiff's claim of negligent misrepresentation under Section 552, Restatement (Second) of Torts (1977). Consequently, the judgment of the Court of Appeals is reversed with respect to the claim of negligent misrepresentation, and the trial court's grant of summary judgment to the defendant is reinstated.

_____

_____
_____FRANK F. DROWOTA, III,
                                JUSTICE

**CONCUR**
Anderson, C.J.
Reid, Birch, Holder, JJ.