# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

LILLIE MAE MAYS,                    )
                                    )
                                    )
    Plaintiff/Appellant,        )  Shelby Circuit No. 66579 T.D.
                                    )
VS.                                 )  Appeal No. W1999-02189-COA-R3-CV
                                    )
FRED'S, INC.,                       )
                                    )
                                    )
    Defendant/Appellee.         )

FILED

January 10, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

## APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE
### THE HONORABLE GEORGE H. BROWN,JR., JUDGE

**MELANIE M. STEWART**
**STEWART WILKINSON AND WILSON, PLLC**
Memphis, Tennessee
Attorney for Appellant

**CAROL M. HAYDEN**
**McDONALD KUHN**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED**

                                           **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.___**

_____Lillie Mays appeals from the Shelby County Circuit Court, which granted summary judgment in favor of the Defendant. For the reasons stated herein, we affirm the trial court's decision.

## I. Facts and Procedural History

On June 10, 1994, Lillie Mae Mays ("Plaintiff" or "Appellant") visited a Memphis area Fred's store ("Fred's") to purchase a flashlight and batteries. Upon attempting to exit the store after making her purchase, she passed through a theft detection device, which is designed to alert store management when merchandise that has not been purchased is being taken out of the store. When Ms. Mays passed through the device, the alarm sounded. Ms. Mays was then stopped by store employees and escorted to a room in the rear of the store.

Ms. Mays was held in the rear of the store for approximately thirty minutes, during which time the contents of her purse were searched.[1] At some point, a store employee called the Memphis Police Department. A male officer arrived at the scene, and subsequently called in a female officer to conduct a search of Ms. Mays. Several times during the episode, Ms. Mays was escorted to the front of the store where she was made to pass through the theft detection device.[2]

Eventually, the male police officer asked the store manager if he believed Ms. Mays was concealing stolen property. The manager responded affirmatively. Ms. Mays was then escorted to a private room in the back of the store where, she alleges, she was "required to take her clothing off and be searched by the female officer of the Memphis Police Department, at the insistence of Defendant's store manager, including her

---

[1] The contents of Ms. Mays' purse were, at some point, emptied onto a table. No stolen merchandise was found.

[2] According to Ms. Mays' deposition, she passed through the theft detection device a total of four times, and the alarm sounded each time.

underclothing." No stolen merchandise was found. Following the strip search, it was determined that Ms. Mays had a sticker attached to the bottom of her shoe which had caused the theft detection device to sound the alarm. Ms. Mays was then allowed to leave the store and no charges were ever filed against her. The entire incident lasted approximately two hours.

As a result of her experience at the Fred's store, Ms. Mays filed the present action asserting claims for false imprisonment, outrageous conduct, intentional infliction of emotional distress, and invasion of privacy. After answering the complaint, the Defendant filed a motion for summary judgment, arguing that no issues of material fact existed and that it was entitled to a judgment as a matter of law. On November 20, 1998, the trial court granted the Defendant's motion for summary judgment.

This appeal followed. All of the issues presented by the Appellant center on the question of whether this case presents genuine issues of material fact such that the granting of the Defendant's motion for summary judgment was improper.

## II. Standard of Review

Summary judgment is appropriate only where the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993); Tenn. R. Civ. P. 56.04. We review the summary judgment motion as a question of law in which our inquiry is *de novo* without a presumption of correctness. Finister v. Humboldt Gen. Hosp., Inc., 970 S.W.2d 435, 437 (Tenn. 1998); Robinson v. Omer, 952 S.W.2d 423, 426 (Tenn. 1997). We must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. Byrd, 847 S.W.2d at 210-11. If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate. Robinson, 952 S.W.2d at 426; Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997).

3

## III. Law and Analysis

In response to the allegations contained in the complaint, the Appellee in the present case presents two alternative arguments. First, Fred's contends that T.C.A. § 40-7-116 and Memphis City Ordinance § 20-18 protect their actions in detaining Ms. Mays.[3] They assert that the activation of the theft detection device gave them probable cause to detain Ms. Mays and conduct an investigation into whether she was attempting to steal merchandise from the store. Ms. Mays concedes that the employees of the Defendant had probable cause to stop her and investigate. However, she contends that the activation of the theft detection device did not provide probable cause for the two-hour detention and strip-search which followed.

As an alternative basis for the granting of the motion for summary judgment, the Appellee argues that they are not legally responsible for the two hour detention that culminated in Ms. Mays being strip-searched. They contend that their employees only detained Ms. Mays for thirty minutes and that the officers of the Memphis Police Department, rather than Fred's employees, were responsible for holding Ms. Mays for the remainder of the time, as well as for the strip-search which was conducted.

The first argument advanced by the appellee requires us to consider the latitude which T.C.A. § 40-7-116 provides merchants in investigating possible shoplifting. The

---

[3] In relevant part, this section of the Tennessee Code provides:

§ 40-7-116. Shoplifting; detention of suspect

(a) A merchant or a merchant's employee or agent or a peace officer who has probable cause to believe that a person has committed or is attempting to commit the offense of theft, as defined in § 39-14-103, may detain such person on or off the premises of the mercantile establishment if such detention is done for any or all of the following purposes:

. . . .

(b) Probable cause to suspect that a person has committed or is attempting to commit the offense of theft may be based on, but not limited to:

. . . .

(3) Activation of an electronic or other type of mechanical device designed to detect theft;

The Memphis City Ordinance also provides immunity to merchants when, having probable cause to believe that a person has unlawfully taken goods held for sale by the merchant, the merchant detains the person to investigate.

second contention involves an analysis of the record to determine whether a genuine issue of material fact exists regarding Fred's role in the detention and strip-search of Ms. Mays.

As an initial matter, we recognize that the activation of a theft detection device provides a merchant with probable cause under both T.C.A. § 40-7-116 and the equivalent Memphis City Ordinance. However, the existence of probable cause does not allow the merchant to exercise unbridled investigative discretion. Quite to the contrary in fact, the aforementioned Tennessee statute requires that the merchant or the merchant's employee act in a "reasonable manner under the circumstances." Tenn. Code Ann. § 40-7-116(c)(2). Additionally, the suspected person may only be detained for a "reasonable period of time." Tenn. Code Ann. § 40-7-116(c)(3). Therefore, the existence of probable cause in the present case is not dispositive of Fred's liability.

The reasonableness of a particular undertaking, namely the detention and strip-search in the present case, generally involves a factual determination. That fact weighs against the dismissal of this case at the summary judgment stage. However, this case presents an interesting situation in that there is a question as to Fred's role in the detention and strip-search of Ms. Mays. Fred's contends that the officers of the Memphis Police Department took over upon their arrival and that they were responsible for the additional detention and strip-search. In short, Fred's argues that even if reasonable minds could differ as to whether the detention and strip-search of Ms. Mays was reasonable, as we believe they could, Fred's still is not liable because its employees did not cause the detention or the strip-search. Ms. Mays, on the other hand, asserts that the detention and strip-search, although conducted by the police officers, was done at the insistence of the Fred's store manager.

As this case was dismissed at an early stage, the record is not well-developed. Other than the pleadings, the only evidence of the happening is contained in Ms. Mays' deposition. Our review of that deposition, as well as her complaint, leads us to the conclusion that Fred's cannot, under the law, be held liable for the two hour detention and

5

strip-search of Ms. Mays.

Upon exiting the Fred's store, Ms. Mays activated the theft detection device. At that point, it is undisputed that Fred's employees had probable cause to detain Ms. Mays for a reasonable time in order to conduct an investigation. According to Ms. Mays, she was escorted to a room in the back of the store where, at some point, the contents of her purse were emptied onto a table.[4] However, Ms. Mays is clear in her testimony that no employee of Fred's ever accused of her of attempting to steal merchandise from the store.[5]

> Q:    Up to that time, anybody accuse you of stealing anything?
> A:    No.
>
> Q:    Anybody accuse you of shoplifting?
> A:    Not at that present time.
>                          . . .
> Q:    Now, up until the time that this police officer asked you had you ever shoplifted before, had anybody from Fred's ever said anything to you about shoplifting?
> A:    No.
>
> Q:    Had anybody from Fred's ever accused you of shoplifting?
> A:    No.
>
> Q:    Had anybody from Fred's ever accused you of stealing anything?
> A:    No.

It is just as clear that Ms. Mays was held only for a short time prior to the arrival of the police. In fact, she stated that she was in the back room of the store for only "about thirty minutes" before the police arrived. Therefore, after activating the theft detection device, Ms. Mays was escorted to the back of the store where she was held for thirty minutes. She had the contents of her purse searched by a Fred's employee. All the while, she was never accused of stealing, nor were there any actions on the part of the Fred's employees which, up to this point, are alleged to be unreasonable.

---

[4] It is not clear whether this was done at the urging of a Fred's employee, or whether Ms. Mays emptied the purse of her own volition. Ultimately, the discrepancy makes little difference as a search of her purse would most certainly have been a reasonable investigative measure by Fred's.

[5] Ms. Mays' deposition testimony does indicate that, prior to the arrival of the police, an employee of Fred's asked her whether she had ever shoplifted before.

The actions which form the basis for Ms. Mays' complaint occurred after the arrival of the police officers. She was detained for an additional one and a half hours. She was apparently escorted, by two separate police officers on two separate occasions, to the front of the store where she was made to pass through the theft detection device. Finally, she was subjected to a strip-search in the back of the store. However, it is apparent from the deposition testimony of Ms. Mays that the Fred's employees had little, if any, role in what occurred after the arrival of the police officers.

> Q:  All right. Did anybody at Fred's saying (sic) anything about searching you?
> A:  No.
> Q:  All the black manager said was that he thought you still had something of his?
> A:  Right.
>
> . . .
>
> Q:  And nobody at Fred's said anything about searching?
> A:  No.

While one cannot help but sympathize with Ms. Mays, taking her deposition testimony as true and casting all inferences in her favor leads us to the conclusion that summary judgment was properly granted in favor of Fred's. At the most, Fred's store manager provided information to the police officer which led the police to conduct the strip-search. However, as the Appellee points out, merely providing information to a police officer will not render that person liable. Hertzka v. Ellison, 8 Tenn. App. 667 (Tenn. Ct. App. 1928).[6] Simply put, even if it were determined that the detention and strip-search were unreasonable, there is no factual basis upon which to conclude that Fred's is responsible.

---

[6] The Appellant argues that Hertzka is not applicable because it speaks in terms of an individual providing information which leads to an arrest. Although there was no arrest in the present case, we consider the logic of the Hertzka decision to be applicable in the present situation.

7

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court granting the Defendant's motion for summary judgment. Costs of this appeal are taxed to the Appellant, Lillie Mae Mays, for which execution may issue if necessary.


_____HIGHERS, J.


CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.