IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 8, 2001 Session

## CHARLES DAVID KILLION v. JOHNNY HUDDLESTON

**Appeal from the Chancery Court for Davidson County**
**No. 99-3360-III     Ellen Hobbs Lyle, Chancellor**

_____

**No. M2000-02413-COA-R3-CV - Filed September 19, 2001**

_____

This is an action for damages for negligent misrepresentation. The plaintiff invested $50,000.00 in Eureka Vacuum Cleaner Company at the advice and urging of the unlicensed defendant who was to receive a substantial commission. The investment was a scam. Recovery for the loss was allowed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR., J., joined.

Harry R. Cash, Chattanooga, Tennessee, for the appellant, Johnny Huddleston.

Wayne Detring, Hendersonville, Tennessee, for the appellee, Charles David Killion.

**OPINION**

**I.**

Each of these parties was victimized by one Fulton, a friend and partner of the defendant, who unwittingly but negligently participated in a Ponzi-like scheme devised by Fulton.

The defendant and plaintiff were acquainted by virtue of their landlord-tenant relationship. The defendant owned certain real estate leased to the plaintiff who operated a Dairy Queen business. In October 1999 the defendant approached the plaintiff about investing money in the Eureka Vacuum Cleaner Company. The investment was discussed in general terms.

The defendant explained to the plaintiff that he had a partner and that they were arranging investments with Eureka, which was based in Illinois. The defendant and his partner, Fulton, were selling "commodities or contracts" when Eureka "needed money up front for manufacturing purposes." The defendant demonstrated in writing how an investment worked, and undertook to

explain to the plaintiff how he could sell the Dairy Queen business and invest the proceeds in Eureka. The defendant projected the success of such an investment by diagraming its value in increments of four, eight, and twelve months, based on a return of 18 percent every four months.

After the closing of the Dairy Queen sale, the plaintiff advised the defendant - who attended the sale - that he would invest in Eureka. The defendant instructed the plaintiff to make the check payable to his partner, Fulton. The plaintiff believed he was to receive a certificate from Eureka, but was given a note for $50,000.00 signed by Billy Fulton as President of Airways Vacuum Corp. On May 6, 1998 the defendant called the plaintiff and told him that Fulton died on May 5, 1998 and that the investment was a scam.

The defendant also invested a substantial sum with his partner, Fulton. Significantly, the defendant was to receive a commission of 32 percent on the $50,000.00 investment, which was not revealed to the plaintiff.

The defendant solicited investments in Eureka, through Fulton, from fifteen individuals commencing in October 1997. These investments amounted to more than one million dollars, and the defendant admits that funds received from new investors were used to pay earlier investors. He admits that he made no investigation of Fulton, or the scheme, but simply accepted his word. He admits that he represented himself to be an "authorized representative" of Eureka, and that the "plaintiff did have faith in me."

## II.

The foregoing recitation forms the basis of the complaint.[1] The defendant denied the allegations by answer, notwithstanding he later admitted, either by discovery or in-court testimony, the essential facts. He pleaded, alternatively, that the plaintiff was himself negligent, and that his comparative fault bars a recovery. He also pleaded the bar of an unspecified statute of limitations, laches, and lack of consideration.

## III.

The Chancellor dismissed the claim based on the Securities Act, finding that the one-year statute of limitations barred the action. The claims based on breach of contract, breach of fiduciary duty, and fraudulent misrepresentation were also dismissed for failure of the plaintiff to sustain his burden of proof.

---

[1] Which alleged various grounds for recovery, including breach of contract, breach of fiduciary duty, negligent misrepresentation, fraud, and violations of the Tennessee Securities Act. None of these grounds was sustained by the Chancellor except negligent misrepresentation.

The Chancellor found that the plaintiff proved by a preponderance of the evidence that the defendant was guilty of negligent misrepresentation and awarded damages of $50,000.00 plus pre-judgment interest.

**IV.**

The defendant appeals and presents for review the issue of whether the court erred in finding him liable under the theory of negligent misrepresentation. The plaintiff presents for review the issues of whether the Chancellor erred in dismissing his claims based on fraud and breach of contract. Our review is *de novo* on the record with a presumption of correctness unless the evidence preponderates against the judgment. Rule 13(d) Tenn. R. App. P.

**V.**

The tort commonly known as negligent misrepresentation is recognized in Tennessee. ***Tartera v. Palumbo***, 453 S.W.2d 780 (Tenn. 1970). Section 552 of the Restatement (Second) of Torts is the standard for negligent misrepresentation. ***Robinson v. Omer***, 952 S.W.2d 423, 427 (Tenn. 1997) ("Tennessee has adopted Section 552 'as the guiding principle in negligent misrepresentation actions'") (citing ***Bethlehem Steel Corp. v. Ernst& Whinney***, 822 S.W.2d 592, 595 (Tenn. 1991)).

Section 552 of the Restatement (Second) of Torts, in pertinent part, provides:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

This section can be reduced to four distinct elements:

(1) The defendant must be acting in the course of his or her business or profession, or in a transaction in which he or she has a pecuniary interest;

(2) The defendant must supply false information to the plaintiff and must intend that this information guide the defendant in a business transaction;

(3) The defendant must fail to exercise reasonable care in obtaining or communicating the information; and

(4) The plaintiff's reliance upon the information must be justifiable.

***John Martin Co. v. Morse/Diesel, Inc.***, 819 S.W.2d 428 (Tenn. 1991).

The first element allows recovery only in situations where the defendant is receiving some financial incentive. If the defendant is acting in the course of his employment, Section 552 will apply. However, no *direct* monetary reward with regard to the transaction involving the alleged faulty information is required. Attorneys have been held liable to non-clients for erroneous advice given in real estate transactions. ***Collins v. Binkley*** 750 S.W.2d 737 (Tenn. 1988); ***Stinson v. Brand***, 738 S.W.2d 186 (Tenn. 1987). Accountants have been held liable to non-clients for faulty audit information. ***Bethlehem Steel Corp.***, *supra*; ***John Martin Co.***, *supra* (construction manager held liable to subcontractor for faulty information); ***Tartera***, *supra*, 453 (land surveyor held liable to non-client purchaser of property for faulty property description in deed). The test for whether the information fits within the parameters of Section 552 is not privity, nor is it direct financial gain. The test is whether the information was given in a business transaction. Since the defendant admitted that he had a pecuniary interest in the transaction - a 32 percent commission - the first element is satisfied.

The second element required is that the information must be false and must be given to the plaintiff with the intent that it guide him or her in a business transaction. The requirement of falsity means simply that the court must look at the exact information provided and determine if it is true or not. The statement made by the defendant must be a statement of a material past or present fact. ***McElroy v. Boise Cascade Corp.***, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982). However, statements of opinion are not actionable. ***Brungard v. Caprice Records***, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980); ***Brown v. Brown***, 863 S.W.2d 432, 434 (Tenn. Ct. App. 1993). Conjecture or representations about future events are not actionable, even if the statements later turn out to be false. ***McElroy***, *supra*, 130.

In addition, the statement must be given in a business transaction setting. In the cases cited above where non-clients are allowed to recover from certain professionals, the information was given in transactions where the professional knew it was likely that others would use it as a decision making reference point. For example, land surveyors know that property descriptions used in deeds in purchase transactions will be relied upon by non-client buyers of the property. In the same manner, accountants know that the audit information they provide to their clients is likely to be relied upon by non-clients. The proof clearly established that the information provided to the plaintiff by the defendant was false and that it was intended to guide the plaintiff to an investment in Eureka.

The third element of negligent misrepresentation requires that the defendant must have failed to exercise reasonable care in obtaining or communicating the alleged false statements. The Supreme Court addressed this element and stated that:

> [t]he burden is always on the plaintiff to establish that the supplier violated his duty
> to exercise due care and competence in obtaining or communicating the information.
> Foreseeability by the provider of the information and reliance by the user of the

information are important safeguards. Negligence by the user of the information may be a bar to recovery.

***John Martin***, *supra*, 435.

The defendant admitted that he failed to exercise due care and proper judgment.

The final element of a negligent misrepresentation under Section 552 is whether the plaintiff's reliance upon the information was justified. To determine this issue, we look at the relative positions of the parties. The plaintiff reposed the utmost trust in the defendant, who acknowledged this fact. While it is true, the defendant argues, that the plaintiff could have investigated the matter, the means of knowledge were not readily available to him and he did not know Fulton. From all the circumstances we believe the proof justified the conclusion that the plaintiff justifiably relied upon the information given to him by the defendant.

## VI.

The defense of comparative negligence will prevent the plaintiff from recovering if his own fault was equal to or greater than that of the defendant. ***John Martin***, *supra*, 435. The defendant argues that the plaintiff's refusal to meet with Fulton constitutes comparative negligence. The plaintiff admitted that he declined to travel to Chattanooga to meet Fulton before investing his funds, because he was doing business with the defendant, not with Fulton.

It may well be argued that the plaintiff was naive, but his position in this scenario was clearly junior to that of the defendant. We agree with the Chancellor that the plaintiff's reliance on the defendant was justified and that such reliance was not negligence. The evidence does not preponderate against the judgment allowing a recovery for negligent misrepresentation.

## VII.

We have considered the issues presented by the plaintiff respecting his claims for fraudulent misrepresentation and fraud of contract, and find that the evidence does not preponderate against the judgment.

The judgment is affirmed at the costs of the appellant, Johnny Huddleston.

_____
WILLIAM H. INMAN, SENIOR JUDGE