IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 29, 2001 Session

## LORETA C. MCCOLLUM, ET AL. v. JAMES W. CONNATSER, JR.

**Appeal from the Circuit Court for Blount County**
**No. L-11841     W. Dale Young, Judge**

**FILED JUNE 29, 2001**

**No. E2000-02561-COA-R3-CV**

On May 9, 1997, Alleen C. McCroskey ("the decedent") passed away, leaving two children, Loretta C. McCollum and James W. Connatser, Jr. McCollum, individually and as administratrix of the decedent's estate, filed suit against her brother, claiming that Connatser, as a result of undue influence on the decedent and/or conversion, wrongfully obtained monies that now rightfully belong to the decedent's estate. The trial court granted Connatser summary judgment, and McCollum appealed. We vacate the grant of summary judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Joseph N. Clarke, Jr., Knoxville, Tennessee, for the appellant, Loreta C. McCollum.

Carl P. McDonald, Maryville, Tennessee, for the appellee, James W. Connatser, Jr.

**OPINION**

I.

On September 3, 1991, the decedent gave her son, the defendant Connatser, a written power of attorney ("the POA"). She died on May 9, 1997, at the age of 85.

On February 17, 1999, McCollum filed her complaint, alleging, *inter alia*, that Connatser wrongfully obtained certain property belonging to the estate as a result of undue influence exerted upon the parties' mother. She also alleged that Connatser had wrongfully converted the property. The complaint listed two checking accounts, a savings account, and seven certificates of deposit that McCollum alleged had been wrongfully obtained/converted by Connatser.

In his answer, Connatser asserted that McCollum's claim was barred by the statute of limitations found at T.C.A. § 28-3-105 (2000), and that McCollum was estopped from bringing suit because the parties had settled all matters between them by way of two agreements executed on June 16, 1994. In addition, he denied any wrongdoing with respect to the accounts and CDs in question.

In response to McCollum's interrogatories, Connatser provided information about several accounts and CDs, including two First American Bank CDs, one numbered 3520754592 ("the '592 CD"), and the other numbered 1605653 ("the '653 CD"). With respect to the '592 CD, Connatser's answers reveal that it was opened by the decedent on April 24, 1992, after the execution of the POA, and held in the joint names of the decedent and Connatser. It was initially funded with $19,134.50, which Connatser "believe[d]" came from an earlier CD held in the joint names of the decedent and *her late husband*. The '653 CD was opened by Connatser, pursuant to the POA, on July 11, 1993, in the joint names of the decedent and Connatser. It was initially funded with $5,000, which Connatser also "believe[d]" came from an earlier CD held in the joint names of the decedent and *her late husband*. The proceeds from the '653 CD were later transferred to a checking account. According to Connatser, all of the funds in the checking account were used for the decedent's benefit.

Connatser moved for summary judgment. In a September 21, 1999, affidavit submitted in support of his motion, he stated, without significant or precise elaboration, that all accounts and CDs predating the September 3, 1991, power of attorney were established solely by the decedent with no input from him and that his subsequent involvement was limited to rolling over or reinvesting the funds in order to obtain a better interest rate. He affirmatively stated that "[he] requested no change in the names on the Certificates, and there were no changes in the ownership interests from those placed thereon by [the decedent]." He further stated that "[he] never used [the decedent's] power of attorney…to change in any way the ownership interests and names on any account established by [the decedent] prior to September 3, 1991." These assertions are a predicate for his position that his ownership interest in the accounts/CDs at issue in this case were the same after the POA as they were before its execution.

In further support of his motion for summary judgment, Connatser filed his Tenn. R. Civ. P. 56.03 statement of the material facts as to which he contended there was no genuine issue for trial. The second paragraph of that statement reads as follows:

> There was nothing in the earlier discovery requests of McCollum to Connatser which evidenced any Certificate openings or name changes in any Certificate made by [the decedent]…, except a Certificate redeemed after [the decedent's] death by [McCollum], on which [the decedent and McCollum] were joint tenants with right of survivorship and a Certificate owned by [decedent's late husband and decedent] on which [the decedent] added Connatser as a joint tenant with right of survivorship after the death of [decedent's late husband.]

Connatser was deposed on January 10, 2000. During his deposition, he was asked about the accounts and CDs in question. Among the accounts discussed was a Union Planters Bank savings account numbered 100031487 ("the '487 savings account"). This account was established by the decedent on October 11, 1991, again after the execution of the POA, in the joint names of the decedent and Connatser. On September 9, 1992, at the request of the decedent, Connatser transferred $9,739.40 into this account, this amount coming from another savings account *held in the decedent's name alone.*

On May 4, 2000, following his deposition, Connatser filed another affidavit, in which he modified his previous affidavit:

> I have had a chance to review records pertaining to financial transactions of my mother's accounts which existed prior to her death and found one (1) account on which the names of the account holders were changed from that originally set by [the decedent] (Account No. 11900185). I had forgotten this account when I provided the information which became my [September 21, 1999, affidavit]. This account was opened by [the decedent] in her individual name on March 9, 1990, with an original deposit of $8,035.27. Interest accrued on this account until September 15, 1992, at which time this 30-month savings certificate matured and the then balance of $9,739.40 was transferred into [the '487 savings account. The '487 savings account] had been established as a joint account by [the decedent] with me as a joint holder. On August 9, 1993, I transferred $32,000.00 of that account into First Federal Bank 25 Month Savings Certificate No. 152000402…. The remaining $6,756.35 of [the '487 savings account] was used for the support, care and maintenance of [the decedent] up to the date of her death, and for funeral-related expenses brought about by her death.

On June 16, 2000, apparently in response to McCollum's complaint that she did not comprehend the meaning of the second paragraph of Connatser's first concise statement of material facts, Connatser filed an amended concise statement of material facts, amending the second paragraph to read as follows:

> There was nothing in the earlier discovery requests by McCollum to Connatser which evidenced any Certificate openings or name changes by Connatser on any Certificate of [the decedent].... There was a Certificate in the name of [the decedent] and McCollum which was redeemed after [the decedent's] death by McCollum, inasmuch as McCollum was named thereon as a joint tenant with right of survivorship. Connatser's name was added as a joint tenant with right of survivorship on a Certificate on which [decedent's late

husband and decedent] were named joint owners due to the death of [decedent's late husband], but the entire amount of the Certificate was used for the support, care and maintenance of [the decedent] up to the date of her death and for funeral related expenses brought about by her death….

Without discussion, the trial court granted Connatser summary judgment. McCollum appeals, asserting that genuine issues of material fact exist as to (1) her allegations of undue influence; (2) the validity and applicability of the June 16, 1994, agreements purporting to settle all matters between the parties; and (3) the question of whether her claim is barred by the applicable statute of limitations.

## II.

Before determining whether summary judgment is appropriate in this case, we must first determine the substantive principles of law that govern the transactions between the decedent and Connatser that occurred after the execution of the POA.

"[A]n unrestricted power of attorney, in and of itself, creates a confidential relationship between the parties." *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995). If such a confidential relationship exists and there has been "a transaction wherein the dominant party receives a benefit from the other party, a presumption of undue influence arises." *Id*. This presumption "may be rebutted only by clear and convincing evidence of the fairness of the transaction." *Id*. It is against the background of these *Matlock* principles that we must decide whether Connatser was and is entitled to summary judgment in this case.

## III.

The standard of review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a

matter of law on the undisputed facts. *See **Anderson v. Standard Register Co***., 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See **Downen v. Allstate Ins. Co***., 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See **Byrd v. Hall***, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or conclusively establish an affirmative defense. *See **McCarley v. West Quality Food Serv***., 960 S.W.2d 585, 588 (Tenn. 1998); ***Robinson v. Omer***, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See **McCarley v. West Quality Food Serv***., 960 S.W.2d at 588; ***Robinson v. Omer***, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See **Robinson v. Omer***, 952 S.W.2d at 426; ***Byrd v. Hall***, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See **McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995); ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995).

***Id***. at 88-89 (footnote omitted).

IV.

The facts as related above may be summarized as follows:

(1) In his interrogatory answers, Connatser stated that he used his power of attorney to open the '653 CD in the joint names of the decedent and himself, using funds from an account that was held in the joint names of the decedent *and her late husband*. According to Connatser, the funds in the '653 CD were ultimately transferred to a checking account, which, again according to Connatser, was consumed for the decedent's benefit.

(2) In his first affidavit, he stated that he made no ownership changes to any accounts.

(3) In his first concise statement of material facts, he stated that the only two CDs that had changed ownership were (a) one that was held jointly by the decedent and McCollum, which became solely McCollum's upon the decedent's death; and (b) another that was held jointly by the decedent and her late husband, which the decedent changed into a CD held jointly by the decedent and Connatser. With respect to this latter CD, Connatser was probably referring to the '592 CD, which he had described in a similar fashion in his interrogatory answers.

(4) Subsequent to his deposition, Connatser admitted that he had, at the request of the decedent, partially funded the '487 savings account, which was opened by the decedent in the joint names of the decedent and Connatser, with monies held in the decedent's name alone. Connatser stated that a portion of the '487 savings account was used for the decedent's benefit.

(5) Finally, Connatser amended his first concise statement of material facts to clarify what he had meant to convey, *i.e.*, the information in (3) above. In addition, he added the statement that the entire amount of a CD that he owned jointly with the decedent – and here he is again apparently referring to the '592 CD alluded to in his interrogatory answers – was used for the decedent's benefit. This statement cites Connatser's May 3, 2000, affidavit as support for this assertion. That affidavit, however, refers to the '487 savings account and not the '592 CD.

A.

We are of the opinion that summary judgment for Connatser is not appropriate. Connatser obtained an unrestricted power of attorney on September 3, 1991. Thereafter, he engaged in transactions from which he admittedly obtained a benefit, *i.e.*, he or the decedent established and/or

funded accounts that were held jointly with the decedent, *using monies to which he had no legal entitlement prior to the transaction*. This is enough under **Matlock** to give rise to a presumption of undue influence.

Connatser argues in his brief that his involvement with the decedent's accounts and CDs subsequent to the September 3, 1991, power of attorney was limited to rolling over or reinvesting the funds in the pre-power of attorney accounts into new accounts to obtain a better interest rate. He acknowledges one exception – the '653 CD, held jointly by himself and the decedent but established using monies from an earlier account held jointly by the decedent and her late husband – but he asserts that this account was later transferred to a checking account, which, according to him, was consumed for the benefit of the decedent.

Connatser fails to adequately explain, however, the '592 CD, except to assert that it was changed by the decedent, and the '487 savings account, which he held jointly with the decedent even though it was funded, in part, with funds that had previously been held in the decedent's name alone. Both the establishment of the '592 CD and Connatser's transfer of the decedent's solely-owned funds into the '487 savings account occurred after the execution of the power of attorney. Thus, Connatser, *after execution of the power of attorney*, obtained a benefit from the decedent by virtue of post-power of attorney transactions making him joint owner of funds to which, just prior to the transaction, he had no legal rights.

On the record before us, three facts are clear. First, it is clear that on September 3, 1991, the decedent executed a power of attorney in favor of Connatser. The second fact that is abundantly clear is that following September 3, 1991, Connatser and the decedent established accounts and CDs on which his name appears as a co-owner. Finally, it is clear that with respect to certain transactions, *e.g.*, the ones referred to in the preceding paragraph, Connatser benefitted from post-POA dealings with the decedent. What is not at all clear, at least with respect to other transactions, is whether Connatser, after the date of the power of attorney, was the recipient of an ownership interest from investments in which he had no such interest prior to September 3, 1991.

Connatser's affidavits and deposition testimony, taken together, are difficult to understand and somewhat contradictory. Frankly, when we consider Connatser's two affidavits, multiple statements of undisputed facts (there are three), and his deposition testimony, we find ourselves confused by the plethora of information and data supplied by the defendant. When all of the facts before us are considered, we are unable to find clearly-developed undisputed material facts negating the plaintiff's cause of action. Summary judgment is reserved for those situations where the material facts are undisputed, clearly developed, and conclusively demonstrate that the moving party is entitled to a judgment as a matter of law. The facts before us are far from clear. They raise many questions, and the conclusions to be reached based upon them are murky at best. This is not a case for summary judgment.

One aspect of Connatser's argument merits further comment. He contends that the banks involved do not have certain records pertaining to accounts/CDs that pre-date the ones opened after

the POA. Thus, so the argument goes, it is impossible to demonstrate how these earlier accounts/CDs were held. While this may be so, this is of little solace to the defendant *on summary judgment*. The defendant, at this preliminary stage of the proceedings, has the burden of *negating* – not just "nipping at the heels of" – an essential element of the plaintiff's cause of action. This means, in the context of the present litigation, that the defendant, in order to obtain summary judgment, must show that the subject transactions – the ones in which he obtained an ownership interest – were *not* transactions involving a transfer from an investment in which he had no ownership interest. He does not do this by claiming that the earlier documents are not available. We recognize that the plaintiff has the burden *at trial* of showing a transaction in which the defendant received a benefit from the decedent after the execution of the power of attorney. We also recognize that her efforts to do so may be hampered by the lack of bank records. If she cannot make out her case at trial, she will lose; but the burden at the summary judgment stage is on the defendant, not on the plaintiff. The defendant cannot be successful on summary judgment by asserting that the plaintiff cannot make out her case. This is clearly not enough under well-established principles of summary judgment law. *See **Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993).

B.

Connatser next asserts that McCollum should be estopped, by way of summary judgment, from bringing this suit because, according to Connatser, the parties had settled all matters between them by way of two agreements executed on June 16, 1994. We disagree.

On June 16, 1994, the parties to the instant litigation signed two separate agreements. According to Connatser, the following language from one of the agreements is relevant to the issues before us:

> WHEREAS, Alleen Connatser McCroskey prior to her incompetency had established various certificates of deposit with right of survivorship with Loreta C. McCollum and James W. Connatser, and
>
> * * *
>
> It is hereby AGREED between the parties as follows:
>
> * * *
>
> 2. James W. Connatser by way of his Power of Attorney for Alleen Connatser McCroskey shall continue to pay the bills of Alleen Connatser McCroskey, using first funds that are solely in the name of Alleen Connatser McCroskey. The parties agree, however, that to the extent funds must be utilized from certificates of deposit upon which Alleen Connatser McCroskey has designated a right of survivorship in Loreta C. McCollum or James W. Connatser, the funds so utilized

-8-

shall be deducted pro-rata from all such joint accounts, such that the total distribution to Loreta C. McCollum and/or James W. Connatser shall be in the same proportion at the death of Alleen Connatser McCroskey as currently exists.

The other agreement pertains to real property, the remainder interest in which was owned by McCollum at the time the agreement was executed, with the life estate being owned by Ms. McCroskey, who, according to the agreement, "is suffering from Alzheimer's disease and is presently residing in Colonial Hills Nursing Home."

The record, in its present state, does not support summary judgment for the defendant on his theory that the agreements in question settle the claims asserted in the complaint. The agreement dealing with the real property makes no mention of the bank accounts or CDs at issue in this case. At the present time, the relevancy of that document is not established; in any event, that document, on its face, does not support an award of summary judgment to the defendant on the claims asserted in the complaint based on the present state of the record.

With respect to the other agreement – the one that does refer to "certificates of deposit with right of survivorship with Loretta C. McCollum and James W. Connatser" – there is no reference on the face of that agreement expressly addressing the issue before us, *i.e.*, the alleged undue influence/wrongful conversion of the defendant with respect to the bank accounts and CDs at issue in this case. Furthermore, there is no express reference on the face of this agreement that it was intended as a settlement of the subject dispute. There is certainly nothing before us now that indicates the subject controversy was within the contemplation of the parties, or intended by the parties to be the subject of this latter agreement, when the agreement was executed in 1994.

The question of whether, and to what extent, either of the subject agreements addresses the issues raised in the pleadings must await the further development of proof in this case.

C.

The final issue is whether McCollum's conversion claim was timely filed. The parties agree that the proper statute of limitations is found at T.C.A. § 28-3-105 (2000), which provides, in pertinent part, as follows:

The following actions shall be commenced within three (3) years from the accruing of the cause of action:

* * *

(2) Actions for the detention or conversion of personal property.

-9-

Generally, a cause of action does not accrue until "the tort is complete and injury to the plaintiff has occurred." **Hunter v. Brown**, 955 S.W.2d 49, 51 (Tenn. 1997). "Conversion is the appropriation of property to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." **Brandt v. BIB Enterprises, Ltd.**, 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998) (internal quotation marks, modification marks, and citation omitted); *see also* **Barger v. Webb**, 216 Tenn. 275, 391 S.W.2d 664, 665 (1965).

Connatser argues that if he wrongfully "exercise[d]" dominion over assets belonging to the decedent "in defiance of [her] rights," *see* **Brandt**, 986 S.W.2d at 595, he did so more than three years before McCollum filed her complaint. On the other hand, McCollum argues that since, according to Connatser's theory of defense, he was using the funds in question for the care of the decedent, his "dominion over" the funds would not have been adverse to the interests of the decedent/her estate until after the decedent's passing on May 9, 1997. Thus, so McCollum argues, her filing of February 17, 1999, was well within the applicable three-year statute of limitations.

In our judgment, the record before us does not establish, as a matter of law, that the defendant is entitled to summary judgment based upon the defense of the statute of limitations. This is because the facts now before us do not reflect that the defendant "exercise[d]...dominion over [the funds in question], in defiance of plaintiff's right" at a point in time more than three years before the filing of the instant action. *See, id.*

V.

In light of the foregoing, we find and hold that Connatser has failed to carry his burden on summary judgment to show that there is no genuine issue of material fact requiring a trial. We hold, therefore, that the trial court erred in granting summary judgment to Connatser. Consequently, such judgment is vacated. This case is remanded for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellee.

_____
CHARLES D. SUSANO, JR., JUDGE