IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2003 Session


ARTHUR CREECH, ET AL. v. ROBERT R. ADDINGTON, ET AL.


Appeal from the Circuit Court for Sevier County
No. 97-16-II     Richard R. Vance, Judge

FILED JANUARY 7, 2004

No. E2003-00842-COA-R3-CV

———————————————


The plaintiffs leased land in Mississippi from D.C. Parker and Richard B. Flowers ("Defendants") for the purpose of building motels on the land. Plaintiffs claim they were told by Defendants' agent that financing was in place to build immediately and that this representation induced them to enter into the leases. Financing never materialized and the motels never were built. Plaintiffs sued Defendants, the parties expected to provide financing, and others. Defendants filed a motion for summary judgment, which the Trial Court granted. Plaintiffs appeal. We vacate and remand.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated;
Case Remanded.**


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.


David H. Parton, Gatlinburg, Tennessee, for the Appellants, Arthur Creech and wife, Glenda Creech; Claude Hatfield and wife, Deborah Hatfield; Wayne Martin and wife, Alice Martin; Brent Chitwood and Marvin B. Chitwood, Jr., d/b/a Triad Partners; Darlene Reinier; Vicki Jacobs; Joann L. (Maddy) Wolfe; Laurel Group, Inc.; and Golden Girls, Inc.

Rick L. Powers and Dan D. Rhea, Knoxville, Tennessee, for the Appellees, D.C. Parker and Richard B. Flowers.

# OPINION

## Background[1]

The plaintiffs in this lawsuit are: Arthur Creech and wife, Glenda Creech; Claude Hatfield and wife, Deborah Hatfield; Wayne Martin and wife, Alice Martin; Brent Chitwood and Marvin B. Chitwood, Jr., d/b/a Triad Partners; Darlene Reinier; Vicki Jacobs; Joann L. (Maddy) Wolfe; Laurel Group, Inc.; and Golden Girls, Inc. ("Plaintiffs").

In October of 1993, several of the Plaintiffs[2], along with others, attended a meeting held at the Laurel Inn in Gatlinburg, Tennessee. At that meeting, Lloyd and Betty Link ("the Links") spoke regarding potential real estate investment and development opportunities in Tunica, Mississippi. At that time, several casino gambling boats were docked in Tunica and some people anticipated a construction "boom" occurring on the land near the casino boats. Anticipated development included motels, restaurants, and entertainment venues.

None of the Plaintiffs had met the Links prior to this October meeting. Plaintiffs were invited to the meeting by H. Earl Allen, III, a rental agent and manager at Laurel Inn. Several of the Plaintiffs owned condos at the Laurel Inn. Mr. Allen claims that several of the Plaintiffs had asked if he knew of real estate investment opportunities. Mr. Allen met Lloyd Link through a friend and arranged for the Links to make their presentation.

Plaintiffs allege that the Links represented at the October meeting that financing to build multi-million dollar motels was in place and that construction would begin immediately if Plaintiffs leased land owned by Defendants. Plaintiffs claim that Lloyd Link told them that the only way to get the land was through him. Plaintiffs also claim that they were told that they needed to act quickly if they wanted to participate in this investment opportunity because there were other potential investors who would take the deal if they did not.

As a result of this meeting, Plaintiffs decided to invest money to lease land owned by Defendants. Documents purporting to be contracts for the sale of commercial real estate were signed at the meeting by Arthur Creech for the Laurel Group, Inc. and Joann L. Maddy, Darlene Reinier, and Vicki S. Jacobs for the Golden Girls, Inc. These documents named Lloyd and Betty Link d/b/a Link and Associates as escrow agents for Defendants. The documents never were signed by Defendants. Although the documents signed at the meeting purported to be contracts for the sale of land, Plaintiffs understood that they were going to lease the land, not purchase it. Plaintiffs gave

---

[1]The facts of this case are more involved than we discuss in this Opinion. For purposes of clarity, we discuss only the facts directly relevant to the issues on appeal.

[2] Only a few of the named Plaintiffs attended the October meeting. These Plaintiffs then contacted family members and friends who became involved in the Tunica investment. For purposes of simplicity, we will refer to the group who attended the meeting as "Plaintiffs" with the understanding that not all of the named Plaintiffs actually attended this meeting.

some money to the Links at the meeting as a down-payment on the leases. Plaintiffs formed two groups and incorporated in Mississippi as the Laurel Group, Inc. and the Golden Girls, Inc. Mr. Allen was named president of both corporations.

Further discussions ensued involving Plaintiffs, Mr. Allen, and some of the other defendants. In addition, several of the Plaintiffs went to Tunica to view the property. Plaintiffs claim they were assured multiple times that financing was in place and that construction would begin immediately, and that they were shown documents that led them to believe these representations. However, Plaintiffs have no written commitment regarding the allegedly promised financing.

Mr. Allen and several of the Plaintiffs went to Tunica in December of 1993, and a ground lease for a parcel of Defendants' property was signed on behalf of the Laurel Group and one on behalf of the Golden Girls. The leases, which are substantially the same, were for a twenty-year term with an option to renew and contained specific provisions allowing Plaintiffs to build a motel on each group's parcel within a six month time frame. The leases provided for what would happen if the motels were built within the six-month time frame and for what would happen if they were not built within the allotted time.

Plaintiffs paid $125,000 to lease each of the two properties. However, Defendants claim to have asked for and received only $100,000 per property. Apparently, the Links retained the extra $25,000 on each lease. Defendants claim that the Links were not acting as their agents but rather that they had an understanding with the Links that if the Links found lessees for Defendants' property, the Links could retain any amount obtained above Defendants' asking price. Several checks show payments from Defendants to the Links. Some of these checks contain notations such as 'finder's fee.' Defendants also filed 1099 forms showing payments to the Links.

The financing to build the motels that Plaintiffs claim they were promised never materialized. Plaintiffs attempted to arrange for financing from another source, but were unsuccessful. The motels never were built. In addition, the casinos did not stay in Tunica, but instead moved to another location closer to Memphis. Plaintiffs were left with costly leases on cotton fields. Defendants eventually exercised default provisions contained in the documents, and the leases were terminated.

Plaintiffs sued a number of parties including Defendants, Mr. Allen, the Links, and the parties who were expected to provide financing. The Links and another party were dismissed from the suit based upon the statute of frauds. Defendants filed a motion for summary judgment, which the Trial Court granted.[3] In its order granting summary judgment, the Trial Court found there were no disputed genuine issues of material fact. The Trial Court stated in its memorandum opinion that the central theme of the lawsuit had to do with whether misrepresentations were made regarding financing. The Trial Court found there was no evidence that Defendants misrepresented anything with respect to the financing. Rather, Defendants simply were supplying the land to be leased. The

_____

[3]Plaintiffs reached a mediated agreement with Mr. Allen and settled with the remaining defendants.

Trial Court found that there was "no direct proof that [Defendants] made any misrepresentation to induce anyone…" and further, that there was no breach of the lease. Plaintiffs appeal the grant of summary judgment.

## Discussion

Plaintiffs present one issue for review: whether the Trial Court erred in granting Defendants summary judgment. Defendants phrase the issues differently as: 1) whether an independent broker's representations regarding construction financing are ratified by landowners who merely lease their land; and 2) whether investors who undertook the obligation to build are entitled to rescind their lease on the ground of mutual mistake when anticipated construction financing falls through. The dispositive issue on appeal, however, is whether the Trial Court erred in granting summary judgment.

As our Supreme Court has instructed:

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall,* 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d at 588; *Robinson v. Omer,* 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving

party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88-89 (Tenn. 2000) (footnote omitted).

In its order granting summary judgment, the Trial Court found there were no disputed genuine issues of material fact. The Trial Court stated in its memorandum opinion that the central theme of the lawsuit had to do with whether misrepresentations were made regarding financing. The Trial Court found there was no evidence that Defendants misrepresented anything with respect to the financing, and that Defendants simply were supplying the land to be leased. The Trial Court found that there was "no direct proof that [Defendants] made any misrepresentation to induce anyone…" and further, that there was no breach of the lease.

The Trial Court did not, however, address Plaintiffs' claim that the Links were Defendants' agents and that Defendants were liable for their agents' misrepresentations. It is clear from the Memorandum Opinion, which is a transcript of the Trial Court's ruling from the bench including questions and statements by counsel, that Plaintiffs' counsel continued to argue that Defendants' agents, the Links, made these fraudulent misrepresentations to Plaintiffs. For example, the Trial Court stated that "[Defendants] are not the ones who were building hotels or financing… [Defendants] were selling or leasing the land." In response to this, Plaintiffs' counsel stated that "their agent certainly was telling people that." If the Links were acting as Defendants' agents, and Plaintiffs were induced to lease the land by fraudulent misrepresentations made by the Links as Defendants' agents, then Defendants potentially could be liable for those misrepresentations. *See Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002) (stating: "When an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency.").

In discussing agency, our Supreme Court has stated:

The existence of an agency relationship, however, "is a question of fact under the circumstances of the particular case," and is determined by examination of agreements among the parties or of the parties' actions. The principal's right to control the acts of the agent is a relevant factor when determining the existence of an

agency relationship. The amount of actual control exercised by the principal over the agent also may be determinative of whether an agency relationship exists.

*Id.* (citations omitted).

The question of whether the Links were acting as Defendants' agents is a disputed question of fact. Defendants neither negated an essential element of Plaintiffs' claim of Defendants' liability based on the actions of Defendants' alleged agents nor did Defendants conclusively establish an affirmative defense as to this theory of liability. As there is a genuine issue with regard to the material facts regarding whether the Links were Defendants' agents, summary judgment is not proper on this issue.

We do not address the other grounds initially argued in Defendants' motion for summary judgment as those issues are not before us in this appeal. We vacate the Trial Court's January 4, 2001, order granting summary judgment to Defendants Parker and Flowers and remand this case to the Trial Court.

## **Conclusion**

The judgment of the Trial Court granting summary judgment to Defendants is vacated, and this cause is remanded to the Trial Court for further proceedings. The costs on appeal are assessed against the Appellees, D.C. Parker and Richard B. Flowers.

_____
D. MICHAEL SWINEY, JUDGE