IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief July 23, 2004

## LARRY ECHOLS EL v. FRED FIGUEROA, ET AL.

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 9397     Jon Kerry Blackwood, Judge**

_____

**No. W2004-00617-COA-R3-CV - Filed December 9, 2004**

_____

The Plaintiff, an inmate, filed suit alleging that he was unlawfully deprived his right to practice his religion and that certain of his religious tapes were confiscated and he was denied the right to congregate and worship in accordance with his faith. Defendants filed a motion for summary judgment supported by an affidavit and Plaintiff responded with his own affidavit. Having determined that there are disputed issues of material fact, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Larry Echols El, _Pro se_.

James I. Pentecost and Brandon O. Gibson, Jackson, Tennessee, for the appellees, Fred Figueroa, Willie Clemmons and Danny Wilkes.

**OPINION**

At the time of filing his complaint, the plaintiff, Larry Echols El, was an inmate in the Whiteville Correctional Facility (WCF) in Hardeman County, Tennessee. Mr. El was a Wisconsin inmate and the Wisconsin Department of Corrections had contracted with Corrections Corporation of America (CCA) to house Wisconsin inmates at CCA's Whiteville facility. Defendant Fred Figueroa is described in the complaint as the warden of WCF. Defendant Willie Clemons is described as the assistant warden of programs and Defendant Danny Wilkes as Chaplin at the WCF.

The gravamen of Mr. El's complaint is that he was unlawfully deprived of the right to practice his religion while incarcerated at WCF. It is alleged that this deprivation consisted of the confiscation of his religious tapes and the denial of his right to congregate and worship in accordance with his faith. Mr. El is a member of the Moorish Science Temple of America, Inc. (MSTA). He

states that he is a registered "Moslem" and that his religion "was founded in 1913 A.D. by Prophet Noble Drew Ali." The members of the temple are known as Moors. In early September 2000, Warden Figueroa posted a memo advising inmates that cassette tapes and cassette players were no longer allowed in the correctional institution. Inmates were advised that they had until September 15, 2000, to remove these items from the facility, either by having the items mailed out, donated, or destroyed. On or about September 20, 2000, fifteen cassette tapes were removed from the Plaintiff's cell.

On or about April 20, 2001, all WCF inmates were required to complete a Religious Preference Form if they desired to participate in worship services or religious study groups at WCF. The Religious Preference Form states in pertinent part as follows:

> If you want to participate in Congregate Worship Services or Religious Study Groups or acquire religious property except books and literature you need to fill out this form and check what religion you prefer. If you change your mind later and want to participate in Congregate Worship Services or Religious Study Groups or acquire religious property of a different religion, you have to wait 6 months from the date you last filled out the form. If you don't have any religious preference at this time, you can check "No Preference". If you checked "No Preference" you can fill out this form and check the religion you prefer at any time. Participation in any religious activity is voluntary.
>
> CHECK ONE
>
> \_\_\_     This is the first time I have filled out this form.
>
> \_\_\_     I filled out a form like this before, but I am choosing a different religion.
>
> Check The Religion You Prefer. If You Prefer A Religion That is Not Listed, Write It In After The Word, "Other"
>
> \_\_\_     Buddhist              \_\_\_     Protestant
>
> \_\_\_     Catholic              \_\_\_     Wicca[1]
>
> \_\_\_     Islam                 \_\_\_     Other _____
>
> \_\_\_     Jewish                \_\_\_     No Preference
>
> \_\_\_     Native American

---

[1]Wicca is defined as "witchcraft, esp. benevolent, nature-oriented practices derived from pre-Christian religions." *Random House Unabridged Dictionary* 2172 (2nd ed.1993).

Mr. El describes himself as a Moslem.[2]  The Defendants filed a motion for summary judgment which the trial court granted.  Mr. El appealed and the issue before this Court is whether the trial court erred in granting the motion for summary judgment.

## *Standard of Review*

Our standard of review is as set forth in *Staples v. CBL & Associates, Inc.*, as follows:

> The standards governing an appellate court's review of a motion for summary judgment are well settled.  Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met.  *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts.  *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).  The moving party has the burden of proving that its motion satisfies these requirements.  *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991).  When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.  *See Byrd v. Hall*, 847 S.W.2d at 215.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or conclusively establish an affirmative defense.  *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997).  If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail.  *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426.  If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

> The standards governing the assessment of evidence in the summary judgment context are also well established.  Courts must view the evidence in the

---

[2]"Moslem" is defined as a "[variation] of Muslim.  *Webster's Ninth New Collegiate Dictionary* 773 (9[th] ed. 1991).  "Muslim" is defined as "an adherent of Islam."  *Id*. at 782.

light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 88-89 (Tenn. 2000)(footnote omitted).

In support of the motion for summary judgment, Defendants filed the affidavit of Warden Figueroa which states as follows:

1.      I[] was employed as Warden at Whiteville Correctional facility ("WCF") in Whiteville, Hardeman County, Tennessee during the time alleged in the Complaint. Inmates from the State of Wisconsin, including inmate Larry Echols El, were housed at WCF during the time alleged in the Compliant, and efforts were made to comply with policies mandated by the Wisconsin Department of Corrections when practical and in the best interest of the facility.

2.      In 1999, the Wisconsin Department of Corrections amended its policy to prohibit inmates from possessing cassette tapes and cassette players. This amendment was deemed necessary for the safety and security of correctional facilities operated by the State of Wisconsin or those contracting with the State of Wisconsin to house Wisconsin inmates.

3.      On or about August 17, 2000, I issued a Memorandum to all WCF inmates and staff advising that cassette tapes and cassette players would no longer be allowed after September 15, 2000. A copy of the Memorandum is attached hereto as Exhibit "A".

4.      On or about September 20, 2000, WCF staff confiscated approximately fifteen (15) cassette tapes from the Plaintiff. There is no indication that the cassette tapes confiscated from the Plaintiff were religious in nature, but even if they were, they would still be considered contraband. Furthermore, even if the cassette tapes were religious in nature, the Plaintiff had alternative means, such as written literature, to obtain and utilize the information contained on the cassette tapes.

5.      Because of an increase in the WCF inmate population, limited available space and increasing security needs it became necessary to identify the religious preferences of all inmates and to place all sub-groups under a predominate denomination as far as scheduling times for religious services.

-4-

6.        It is my understanding that the Plaintiff indicated that he was a member of the Moorish Science Temple of America. It is further my understanding that the Moorish Science Temple of America is a sub-group of the Muslim faith, and therefore the Plaintiff would have been allowed to practice his religious beliefs during the times scheduled for the Muslim faith.

7.        There was never any attempt on my part, or any other WCF staff member that I am aware, to interfere with the Plaintiff's right to practice his religious beliefs. However, it was deemed in the best interest of the facility to prohibit inmates from possessing cassette tapes and cassette players, and it was necessary to schedule religious services under a predominate denomination for the reasons indicated above. To the best of my knowledge and belief, the Plaintiff was free to engage in the practice of his religious beliefs, and the changes in policy did not unreasonably affect his ability to practice his beliefs as he so chose.

8.        Further, Affiant saith not.

Mr. El filed an affidavit in response which states, in essence, that the fifteen cassette tapes that were destroyed were religious tapes of the Moorish Science Temple of America religious service and Sunday school lessons and were destroyed without his permission. He asserts that he was allowed to practice his religion from 1998 until 2001 when the Moorish Science service was removed from the schedule and that he was not allowed to congregate in the chapel with other Moorish members for worship services. He further states that the Moorish service is conducted differently than other Islamic services and that he follows the teachings of Prophet Drew Ali only. He further asserts that WCF was built to house 1,536 inmates and that Wisconsin contracted with CCA to house 1,536 inmates at the Whiteville Correction Facility.

It is obvious that there are disputed material facts. For example, Warden Figueroa states in his affidavit that limited space and increasing security needs made it necessary to place all the inmates in various subgroups under predominant denominations. He does not address why MSTA was not included in the various religious services. Mr. El states in his affidavit that he was allowed to practice his religion from 1998 until 2001 when the Moorish Science service was removed from the schedule and, therefore, he was not allowed to congregate in the chapel with other members of his faith for worship services. Warden Figueroa's affidavit does not address why the Moorish Science service was removed from the schedule for chapel services. Warden Figueroa's affidavit states that it is his understanding that MSTA is a subgroup of the Muslim faith and therefore Mr. El would have been allowed to practice his religious beliefs during the times scheduled for the Muslim faith. To the contrary, Mr. El's affidavit states that the MSTA service is conducted differently than other Islamic services and follows only the teachings of Prophet Drew Ali.

Mr. El contends that this case is governed by the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc - 2000cc-5 (the Act). The Act prohibits governmental[3] imposition of a "substantial burden on the religious exercise" of a prisoner unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)(2)(2003). The rule applies in cases in which –

> (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or
> (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States or with Indian tribes.

42 U.S.C. § 2000cc-1(b)(1)(2)(2003).

The Appellees did not address the Act in their brief but argue that there is nothing in this record to indicate that the policies and regulations imposed on the Appellant were not rationally related to a legitimate penal logical interest. Each of the cases relied upon by the Appellees predate the Act, which was enacted September 22, 2000. Sufficient evidence is not found in the record before us to make a determination as to whether the Act applies to the case at bar. This will be determined by the trial court on remand.

Having determined that there are disputed issues of material fact which preclude summary judgment, the trial court's grant of summary judgment is reversed and this cause remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellees, Fred Figueroa, Willie Clemons, and Danny Wilkes.

_____
DAVID R. FARMER, JUDGE

---

[3]**(4)Government**
The term "government" –
    (A) means –
        (i) a State, county, municipality, or other governmental entity created under the authority of a State;
        (ii) any branch, department, agency, instrumentality, or official of any entity listed in clause (i); and
        (iii) any other person acting under color of State law;

42 U.S.C. § 2000cc-5(4)(2003).