# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 25, 2012 Session

## ROZBEH ZAIRE v. AMIR ROSHAN-FAR

**Appeal from the Circuit Court for Davidson County**
**No. 08C2898     Amanda Jane McClendon, Judge**

---

**No. M2011-00012-COA-R3-CV - Filed May 31, 2012**

---

This appeal arises out of a lawsuit in which plaintiff sought recovery on claims of fraudulent inducement, breach of contract, negligent misrepresentation, and intentional misrepresentation with respect to the purchase of real property; the trial court awarded judgment to plaintiff only on the claim for negligent misrepresentation only.  Both parties appeal.  We affirm the judgement in all respects

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Patrick Johnson, Nashville, Tennessee, for the Appellant, Rozbeh Zaire.

Cynthia S. McKenzie, Nashville, Tennessee, for the Appellee, Amir Roshan-Far.

## OPINION

BACKGROUND

On September 4, 2008, Rozbeh Zaire and Jamshid Akbara filed a complaint against Amir Roshan-Far and his wife, Fruz Roshan-Far, the owners of commercial property located at 324 Lutie Street ("the Property") in Nashville.  Plaintiffs alleged that Defendants induced them to enter into an agreement to purchase the Property, and that Defendants represented they would finance the purchase for five years and assist Plaintiffs in acquiring long-term financing for the purchase and for renovations.[1]  Plaintiffs contended that a "closing" was held on May 25, 2005; that they made a $5,000 down payment and paid Defendants $1,350 per month until August 2008, but that they never received title to the property; they asserted

---

[1]  The complaint stated that the written "agreement" was attached to the complaint as an exhibit, but no such attachment is in the record.  Mr. Zaire's brief on appeal identifies the "agreement" as the "Commercial Purchase and Sale Agreement," which was introduced as an exhibit at trial.

causes of action for fraudulent inducement, breach of contract, and intentional misrepresentation.

Defendants answered the complaint and generally denied any wrongdoing. They contended that they had offered to sell the Property to Plaintiffs but that Plaintiffs were unable to consummate the purchase and instead elected to lease the Property. Defendants also filed a counterclaim seeking recovery for damages that occurred during Plaintiffs' occupancy of the Property; they later amended their answer to assert a second counterclaim for "Quantum Meruit/Unjust Enrichment," alleging that Plaintiffs had received the benefit of the Property and were obligated to compensate defendants for use of the Property. Plaintiffs answered and denied the allegations of the counterclaims.

On February 20, 2009, Mr. Akbara voluntarily dismissed his claims and was dismissed as a plaintiff. Prior to trial, on Mr. Zaire's Rule 41 notice, the court entered an order dismissing the action against Fruz Roshan-Far.

The case proceeded to a four day bench trial. At the close of the proof, Plaintiff moved to amend the complaint to add a claim for negligent misrepresentation. Defendant also moved to amend his answer to add a counterclaim for fraud and to seek punitive damages. The court granted both parties' motion. The court proceeded to rule that the "Commercial Purchase and Sale Agreement" was not an enforceable contract for the sale of the Property and instead was a lease-purchase agreement. The court found that the agreement was signed by defendant in 2008—not 2005, as indicated on the document itself—and that defendant's purpose in signing it was to enter into a lease-purchase arrangement with Mr. Akbara and Mr. Zaire. The court held that Defendant was liable for negligent misrepresentation but not on the basis of the other causes of actions asserted in Plaintiff's complaint. The court further held that defendant was entitled to a set-off against plaintiff's recovery based on the *quantum meruit* counterclaim and claim for damages to the Property.

The court entered an order awarding Mr. Zaire $33,254.50, representing one-half of the amount of lease payments plus the $5,000 deposit. The court offset his recovery by $32,200, representing what the trial court found to be the total fair market value of the rental property ($800 per month) from June 2005 to July 2008, and including $1,800 incurred in cleaning up the Property after Mr. Zaire and Mr. Akbara vacated. The court held that Mr. Zaire could not recover any money on behalf of Mr. Akbara.

Mr. Zaire filed a motion to alter or amend the judgment, asserting that (1) the trial court erred in allowing the defendant a set-off for the fair market value of the property because it unjustly enriched him for his negligent misrepresentation; (2) the court erred by not allowing Mr. Zaire to recover payments made to defendant by Mr. Akbara; and (3) Mr. Zaire should only be responsible for one-half the amount of the set-off since the court held that Mr. Akbara and Mr. Zaire had separate rights of recovery and that defendant was entitled

to a set-off. Mr. Zaire also filed a motion for discretionary costs pursuant to Tenn. R. Civ. P. 54.04(2).

The court granted Mr. Zaire's motion to alter or amend, and amended his recovery to $56,300.00, representing the total monthly lease payments made by both Mr. Zaire and Mr. Akbara, plus the $5,000 deposit. The court did not modify the amount of defendant's set-off. The court granted Mr. Zaire's motion for discretionary costs in the amount of $3,050.00.

Mr. Zaire appeals, stating the following issues:

1. The trial court's ruling is against the preponderance of the evidence.

2. Proof presented at trial established, by a preponderance of the evidence, that the defendant intended to defraud the plaintiff and thus committed fraudulent inducement and/or intentional misrepresentation.

3. The trial court erred in finding that there was no contract between the plaintiff and defendant and in failing to grant a rescission of that contract.

4. If the agreement between the plaintiff and defendant was a "lease purchase" agreement as the trial court found, it lacked mutuality of remedy.

5. Plaintiff never received the benefit of the contract that he signed with the defendant.

6. Whether the defendant committed a breach of contract, fraudulent inducement, intentional misrepresentation or "negligence by indirect misrepresentation" as found by the trial court, the latter erred in allowing the defendant a set-off for the fair market rental value.

7. Whether the trial court erred in not allowing the appellant to present any proof on the issue of punitive damages.

Defendant cross appeals and asserts these additional issues for review:

1. Whether the trial court erred in not finding that the appellant's claims are barred by the three-year statute of limitations in Tenn. Code Ann. § 28-3-105.

2. Whether the trial court erred in finding that appellee made an indirect negligent misrepresentation to appellant entitling appellant to damages.

3. Whether the trial court erred in excluding the testimony of Amir Babak "Bobby" Banyan.

STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo*, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

DISCUSSION

*I. Breach of Contract, Negligent Misrepresentation, Intentional Misrepresentation, and Fraudulent Inducement*

In its oral ruling, which the court incorporated in its written order, the trial court stated:

> The Court does not find that the parties on May 5th, 2005 entered into an enforceable contract to purchase and sell the property known as 324 Lutie Street, Nashville, Tennessee. While the Court believes that Mr. Roshan-Far signed the agreement in 2008, it was done to help fulfill, what this Court believes, was the agreement, which was the defendant entering a lease-purchase agreement with Jamshid Akbari and later with [Mr. Zaire]. . . . the Court cannot help but conclude that this was a lease-purchase agreement wherein the terms of which were negotiated between Mr. Akbari and the defendant, Roshan-Far. The Court does not find any purposeful or fraudulent acts by the defendant. The Court does find that defendant was negligent by indirectly misrepresenting to plaintiff [Mr. Zaire] about obtaining a loan, whether for purchase of the property or for renovation of the Lutie Street property.

After review of the record, we conclude that the evidence does not preponderate against the trial court's findings that the agreement between the parties was a lease-purchase. Defendant testified that he and Mr. Akbari had a series of conversations regarding the possible purchase of the Property; that Mr. Akbari initially approached him expressing interest in purchasing the Property, but was unable to acquire financing to consummate the purchase. Defendant testified further that, after Mr. Akbari was unable to secure financing, Mr. Akbari told Defendant that he and Mr. Zaire "eventually would like to purchase the property from [me] . . . .," and asked "how can we take possession of this property, you know, so we can in the future buy it?" Defendant testified:

I said, what I can do, I can -- on the computer, I can run some examples of if you had gone to the bank and you had gone through the whole process with them, they probably would do the same thing and give you the cost involved and what would be the payment. I can do something like that to just show you what your payment would be. And if you agree, we have something in real estate called lease purchase which gives you the option to buy. That I can just -- you can just make the payment to me and you will get credit just as if you had purchased it from the bank. The only thing is nothing is going to be in your name until you obtain a loan. [Mr. Akbari] said, well, can you run something for me, I have to show [Mr. Zaire] so he will understand what we have to do in the future. I said, fine, I'll do it for you.

Defendant testified that he put together the Commercial Purchase and Sale Agreement and other documents showing Mr. Akbari what his monthly payment would be and how much would be credited to him and Mr. Zaire if they later purchased the property. Defendant testified that the documents constituted an offer on his part for Mr. Akbari and Mr. Zaire to purchase the property, but that they failed to acquire financing that would enable them to purchase the property and, consequently, his offer was not accepted.

Defendant's testimony supports the court's holding that there was not an enforceable contract for sale, but rather a lease-purchase agreement, and the evidence cited by Mr. Zaire does not preponderate against the holding. Accordingly, the claim for breach of contract for Defendant's alleged "fail[ure] to convey title to [Mr. Akbari and Mr. Zaire]" fails because the Commercial Purchase and Sale Agreement proferred by Mr. Zaire was not an enforceable contract for sale of the Property. We also conclude that the evidence does not preponderate against the court's holding that Defendant was liable for negligent misrepresentation and that the court did not err in holding that Defendant did not fraudulently induce Mr. Zaire or make any intentional misrepresentations.

Negligent misrepresentation occurs when a defendant, acting in the course of her business, profession, or employment, or in a transaction in which she has pecuniary interest, supplies faulty information meant to guide another in their business transactions; the defendant fails to exercise reasonable care in obtaining or communicating information; and the plaintiff justifiably relies upon the information provided by the defendant. *John Martin Co., Inc. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991); *accord Robinson v. Omer*, 952 S.W.2d 423 (Tenn. 1997); *see also* RESTATEMENT (SECOND) OF TORTS § 552 (1977); *Med. Educ. Assistance Corp. v. State*, 19 S.W.3d 803, 816–17 (Tenn. Ct. App. 1999). Mr. Zaire testified that he and Mr. Akbari intended to open a tire shop on the Property, but that the house on the Property would have to be torn down or renovated; that Defendant told him that if he and Mr. Akbari made six months worth of payments that Defendant would get them a loan to renovate the Property; that Defendant "promised us he would get us a loan. . . to tear down the building and then we would build back again, the property"; that Defendant did not get them a loan to renovate the Property and did not later notify Mr. Zaire

or Mr. Akbari that he could not acquire a loan for them. Defendant's assurances that he could acquire financing for Mr. Zaire and Mr. Akbari to renovate the Property—despite their low credit ratings and lack of income—constituted faulty information, and the record shows that Mr. Zaire relied on this information in deciding to lease the Property. The record supports the trial court's ruling that Defendant was liable for negligent misrepresentation.

The five elements of a claim for fraudulent inducement to contract are: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance. *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000). The elements of a claim for fraudulent or intentional misrepresentation are (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). Upon our review of the record, including the evidence cited by Mr. Zaire, the evidence does not support a finding that Defendant made a false statement concerning a fact material to the transaction or that he intentionally, knowingly, or recklessly made a false representation regarding any fact; consequently, the court did not err in dismissing these claims.[2]

## II. Punitive Damages

Mr. Zaire asserts that the trial court erred in not allowing him to present proof regarding punitive damages. A court may award punitive damages only if it finds by clear and convincing evidence that the defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). We have affirmed the trial court's holding that Defendant was liable only for negligent misrepresentation, which does not meet the standard under *Hodges* for a punitive damages award. The trial court did not err in holding that punitive damages were not available in this case.

---

[2] Moreover, the court awarded Mr. Zaire $56,300, which represented the total amount of payments that both he and Mr. Akbari made to Defendant from June 2005 to July 2008. As general rules, the measure of damages in an action to recover for fraud is the actual and direct pecuniary loss that the plaintiff has sustained; in a tort action a plaintiff is entitled to recover only such damages as will compensate for the loss or injury actually sustained in reliance on the misrepresentation and to place the plaintiff in the same position the plaintiff would have occupied but for the fraud or if the representation had been true. *See* 37 Am. Jur. 2d Fraud and Deceit § 379. Accordingly, even if the evidence supported a finding that Defendant fraudulently induced Mr. Zaire to enter into the agreement or intentionally misrepresented a material fact, Mr. Zaire would not be entitled to recover damages in addition to those awarded by the court.

*III. Basis of the Award to Mr. Zaire*

Rather than award Mr. Zaire the rent he paid at the rate of $1,350 per month, the court determined that the Defendant was entitled to a set-off in the amount of the fair market rental value of $800 on the basis of *quantum meruit*. Mr. Zaire contends that the trial court erred in holding that he "received a benefit from the property" and that the court should not have awarded Defendant a set-off. He asserts that the set-off was not proper because Defendant should not have been permitted to benefit from his negligent misrepresentation.[3]

As noted earlier, a plaintiff in a tort action is entitled to recover only such damages as will compensate for the loss or injury actually sustained in reliance on the misrepresentation and to place the plaintiff in the same position the plaintiff would have occupied but for the fraud or if the representation had been true. *See* 37 AM. JUR. 2d FRAUD AND DECEIT § 379. An action based in *quantum meruit* is an equitable substitute for a contract whereby a party that has provided goods and services to another may recover the reasonable value of those goods and services where the following elements are present:

> (1) there must be no existing, enforceable contract between the parties covering the same subject matter;
> (2) the party seeking recovery must prove that it provided valuable goods and services;
> (3) the party to be charged must have received the goods and services;
> (4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
> (5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

*Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995) (citations omitted). The first four elements necessary for Defendant to establish a claim to recover on the basis of *quantum meruit* are clearly established by the evidence. The remaining issue is whether it would be unjust to allow Mr. Zaire to have had possession of the Property for three years without paying for it.

Mr. Zaire argues that "the property was purchased for the purpose of allowing [Mr. Zaire] to put [a] tire shop onto the property," and "while [Mr. Zaire] may have derived some benefit from the contract, *i.e.* storage of tires on the property, he did not receive the essence of the purpose for the contract, to be able to put a tire shop onto the property."

---

[3] Neither party challenges the court's determination that $800 per month is the fair rental value for the Property.

The fact that he was not able to operate his business as he had planned, however, does not detract from the fact that he had use of the property over the period at issue and, in so doing, received the benefit thereof. Without the set-off, Defendant would be deprived of rental income for the three years that Mr. Zaire occupied the Property under circumstances in which, because Mr. Zaire was on the premises, Defendant was unable to make any other use of the Property; this would result in an injustice to the Defendant. Under these circumstances the court did not err granting the Defendant a set-off for the rental value of the premises; in so doing the court awarded Mr. Zaire the amount of his actual financial loss, being the amount he paid in rent that was in excess of the fair market rental value.

Further, it was entirely appropriate for the court to set-off Mr. Zaire's recovery by the amount incurred by the Defendant in cleaning the Property after Mr. Zaire vacated same, the amount of which is not contested by Mr. Zaire and was established by Defendant's testimony.

*IV. Mutuality of Remedy and Enforceability of the Lease-Purchase Agreement*

Mr. Zaire contends that the lease-purchase agreement was unenforceable because it lacked mutuality of remedy.[4] Defendant responds that he "agrees, and has always agreed, that there is no enforceable contract of any kind between the parties." Mr. Zaire does not identify what remedy he is seeking or what action this Court should take based on the fact that the agreement was unenforceable.[5] We have held that Defendant was liable for negligent misrepresentation and that the trial court properly applied the correct standard in determining the measure of damages. Assuming *arguendo* that the agreement was unenforceable, no additional remedy is available to Mr. Zaire.

*V. Statute of Limitations*

Defendant asserts that the complaint should have been dismissed because the applicable statute of limitation, Tenn. Code Ann. § 28-3-105, expired in May 2008—three years after the parties entered into the lease purchase agreement—while the complaint was not filed until September 4, 2008.

Cases have established that Tenn. Code Ann. § 28-3-105, which provides that actions for injuries to personal or real property shall be commenced within three years from the

_____

[4] Mr. Zaire asserts that "even if [Mr. Zaire] had made all of the payments, the Defendant could not have conveyed title to the property without his wife joining into the transfer, which she might or might now have done," and that Defendant's promise to transfer title "would have been 'illusory' . . . ."

[5] In the portion of his brief addressing this issue, Mr. Zaire cites a number of cases for the proposition that a court will not order specific performance of a contract where there is no mutuality of remedy or where an agreement is unenforceable. Neither party sought specific performance of the lease-purchase agreement, however, and those cases are not helpful in determining the outcome of this appeal.

accrual of the cause of action, is the applicable statute of limitations for claims of negligent misrepresentation. *See, e. g. Med. Educ. Assistance Corp. v. State*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999); *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729 (Tenn. Ct. App. 1996); *Ne. Knox Util. Dist. v. Stanfort Const. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006). "A cause of action accrues for either intentional or negligent misrepresentation when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *Med. Educ. Assistance Corp.*, 19 S.W.3d at 817; *see also City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d at 735.

Mr. Zaire testified that he did not discover his injury until July 2008, when he learned that the Property was not titled in his name. At that time, the cause of action for negligent misrepresentation accrued; suit was timely filed within two months.

*VI. Exclusion of Bobby Banyan's Testimony*

Defendant called Bobby Banyan as a witness; Plaintiff objected to Mr. Banyan testifying because he had not been disclosed as a possible witness 72 hours in advance of trial, as required by Rule 29.01 of the Rules of the 20th Judicial District; counsel for Defendant acknowledged that he did not notify counsel for Plaintiff that he intended to call Mr. Banyan as a witness. On appeal, Defendant contends that the court determined that his counsel had done nothing wrong with respect to Mr. Banyan, that Plaintiff was able to vigorously cross-examine Mr. Banyan and, consequently, suffered no prejudice by his testimony, and that the testimony goes to "a very central and important issue in the case." Defendant urges that we reverse the trial corut and consider the testimony as part of the record in this appeal.

Trial courts have broad discretion with respect to the admission or exclusion of evidence and the enforcement of local rules. *Pennington v. Pennington*, M2007-00181-COA-R3-CV, 2008 WL 1991117, at *3 (Tenn. Ct. App. May 7, 2008). An appellate court will find an abuse of discretion "only when the trial court applies an incorrect legal standard, reaches an illogical decision, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Francois v. Willis*, 205 S.W.3d 915, 916 (Tenn. Ct. App. 2006).

We have reviewed the transcript, which includes an extended colloquy between the trial court and both counsel regarding the reason that counsel had not disclosed Mr. Banyan as a witness. The court considered the statements of counsel and sustained Plaintiff's objection to the testimony. The record does not show that the trial court abused its discretion in excluding the testimony.

CONCLUSION

For the foregoing reasons, we affirm the trial court in all respects.

_____
RICHARD H. DINKINS, JUDGE